No. 88-420

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

--------------------------------

STATE OF MONTANA,

        Plaintiff and Respondent,

   -vs-

KATHY (DAVIS) KORANG,

        Defendant and Appellant.

--------------------------------

APPEAL FROM:  District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Henry Loble, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    Edmund F. Sheehy, Jr., Helena, Montana

    For Respondent:

        Hon. Marc Racicot, Attorney General, Helena, Montana
Patricia J. Schaeffer, Asst. Atty. General, Helena
Mike McGrath, County Attorney, Helena, Montana
Leo Gallagher, Deputy County Attorney, Helena

Submitted on Briefs:  March 31, 1989

Decided:  May 18, 1989

Filed:

_____
Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

Kathy Davis Korang appeals from the judgment of the District Court of the First Judicial District, Lewis and Clark County, entered upon a jury verdict finding her guilty of theft and tampering with public records, both felonies. We affirm.

Korang presents three issues for review:

1. Whether the evidence is sufficient to sustain her conviction.

2. Whether the District Court interfered with her right to a fair trial by limiting her counsel's cross-examination of the State's witnesses in order to conclude the trial before a certain date.

3. Whether the District Court erred in its determination of the amount of restitution that Korang was required to pay as a condition of her suspended sentence.

Korang worked in the Lewis and Clark County Clerk and Recorder's Office from 1976 until she was suspended in June of 1987. Beginning in 1980, her duties centered around the operation of the "records counter." She recorded documents in the official County records, as well as searching for and making copies of previously recorded documents requested by members of the public. She collected fees for these services set by state law. The fees were rung up on a cash register, with the various services assigned to different "code keys." Fees for filing and recording documents were each assigned a particular code key, and were also entered separately in a "reception book." Miscellaneous small transactions such as making photocopies were assigned to key three, but were not entered in the reception book.

Korang also had bookkeeping responsibility for this operation and deposited collected fees with the County Treasurer's Office. During busy periods, she was assisted at the counter by other members of the Clerk and Recorder's staff. The deputy clerk did the books for Korang when she was on vacation or ill.

In June of 1987, staff members Dori Kuhl and Marylin Bracken met with Clerk and Recorder Sue Bartlett. They expressed concern about problems with the books being kept by Korang. Their concern stemmed from an incident several weeks before. Both women had issued a large number of death certificates one day and had rung up the fees for them on the cash register. They were curious as to how much money their effort had made for the County, and looked at the book entry for such fees at the end of the day. Instead of an entry approximating the $80 that the women had estimated, the book showed that they had taken in only $8. They began keeping track of amounts they collected when assisting at the records counter, and checking them against the books. They concluded that money was missing, and came to Bartlett.

Bartlett began her own investigation. She counted the cash and photocopied the checks in the till at the end of each day; monitored the register tape, books and deposits; and observed Korang as she went about her work. After several days, Bartlett also began to examine adding machine tapes taken from Korang's waste basket at the end of each day, and kept track of checks and money orders received by mail with requests for copies of birth and death certificates, which Korang kept in her desk. The pattern Bartlett discovered was roughly as follows: (1) miscellaneous transactions entered on cash register key three were voided later in the day; (2) cash in the amount of the voided transactions was taken from the till; (3) either

3

fictitious transactions were then rung up on another code key and checks from Korang's desk substituted to make up the difference and balance the books, or recording and filing transactions entered in the reception book were not rung up on the cash register. It also appeared to Bartlett that when the amount of cash taken from the till did not exactly match the amount of the checks used to replace it, Korang would make an entry on the cash register to make the total from the register tape for that particular day match the corresponding daily total in the book.

When Bartlett became convinced that Korang was taking money, she suspended her without pay. Mary Craig, a certified public accountant, was then hired to perform an audit of the books. Based on Bartlett's observations and the results of the audit, Korang was charged by information with two felonies: theft (common scheme) and tampering with public records or information. She was tried before a jury and convicted of both charges. The District Court sentenced Korang to two consecutive 10-year terms in the Women's Correctional Facility at Warm Springs, but suspended all but 180 days of the terms on the condition that Korang make restitution in the amount of $37,891.25. This appeal followed.

I.

Korang first argues that the evidence presented by the State at trial was insufficient to sustain her convictions. The test applied by this Court to determine whether evidence is sufficient is whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. If the evidence conflicts, it is for the trier of fact to determine which evidence is dispositive. State v. Tracy (Mont. 1988), 761 P.2d 398, 45 St.Rep. 1705.

4

Korang was charged with theft under § 45-6-301, MCA, which states in part:

(1) A person commits the offense of theft when he purposely or knowingly obtains or exerts unauthorized control over property of the owner and:
(a) has the purpose of depriving the owner of the property;
. . .
(6) ... A person convicted of the offense of theft of property exceeding $300 in value ... shall be fined not to exceed $50,000 or be imprisoned in the state prison for any term not to exceed 10 years, or both.

At trial, the State presented testimony by seven witnesses, including Bartlett, Korang's co-workers, and CPA Mary Craig. These witnesses described Korang's behavior at work and how that behavior fit the pattern of missing money discovered by Bartlett. The testimony included direct observation of Korang voiding entries on the cash register and making other, unusual entries; direct observation of Korang making unusual calculations when balancing the books; and direct observation of the results of Korang's work, which produced the altered cash register entries and deposits.

Mary Craig testified that her audit confirmed the pattern observed by Bartlett, and estimated that the money missing as a result of the alterations to the bookkeeping system amounted to approximately $6,000 per year. Her testimony was accompanied by several exhibits, some of which showed actual work done by Korang and some of which summarized Korang's work. Craig also testified that her audit showed irregularities in the bookkeeping system while Korang was at work, but not when she was ill or on vacation.

Our review of the record shows that a rational trier of fact could conclude from the State's evidence that Kathy Korang purposely altered entries in the bookkeeping system

5

used by the Clerk and Recorder's Office in order to gain control of moneys belonging to Lewis and Clark County. Korang's counsel introduced evidence calling the State's theory into doubt and attempting to explain the alterations, but as we said in Tracy, it was for the jury to decide which evidence was convincing. We therefore hold that there was sufficient evidence to sustain Korang's conviction for theft.

The offense of tampering with public records or information is defined in § 45-7-208, MCA:

> (1) A person commits the offense of tampering with public records or information if he:
> (a) knowingly makes a false entry in or false alteration of any record, document, legislative bill or enactment, or thing belonging to or received, issued, or kept by the government for information or record ...

As described above, the State introduced testimony including firsthand observations of Korang altering the cash register tapes and deposit slips in order to substitute checks from her drawer for cash removed from the till. This evidence could convince a rational trier of fact that Korang knowingly made false entries or alterations in financial records kept by the Clerk and Recorder's Office. We therefore hold that there was sufficient evidence to support Korang's conviction for tampering with public records or information.

II.

Counsel for Korang next argues that the District Court interfered with Korang's right to a fair trial by inhibiting the cross-examination of State's witness Mary Craig. At trial, counsel for Korang requested the court's permission to cease his cross-examination of Ms. Craig, and reserve the right to recall her for further cross-examination after he reviewed the evidence upon which he was basing his questions. The court refused this request, citing the time being taken

6

by the trial and counsel's ample opportunity to examine all of the evidence before Ms. Craig took the stand.

The parties agree that the applicable rule of evidence, Rule 611, M.R.Evid., authorized the court to exercise reasonable control over the proceedings in order to avoid "needless consumption of time." Korang cites our decision in State v. Stafford (1984), 208 Mont. 324, 678 P.2d 644, in which we stated that a trial judge must be careful to insure that he remains impartial, and avoids becoming an advocate for one side or the other through his behavior. We also said in that case that the judge must be given sufficient latitude to conduct the trial in an orderly and expeditious fashion. Stafford, 678 P.2d at 648.

The transcript reveals that the court asked counsel for the State if copies of the exhibits had been provided to Korang's counsel prior to trial, and was told that they had. It appears from the record that Korang's counsel had ample opportunity to examine the exhibits prior to trial, and the court was within its authority and discretion in denying counsel's request to suspend cross examination in the interests of avoiding needless consumption of time.

### III.

Korang's final argument takes issue with the restitution ordered by the District Court in consideration for suspending most of Korang's sentences. According to Korang, the restitution order was improper for two reasons; the amount of restitution went beyond the scope of the offenses charged, and any claim for amounts taken more than two years prior to the filing of the information was barred by the applicable statute of limitations. We disagree.

Korang claims that the restitution order went beyond the scope of the offenses charged by exceeding the authority granted by §§ 46-18-241 through 46-18-249, MCA. Section

7

46-18-241, MCA, authorizes a court to require an offender to make restitution to the victim of the offense. Under § 46-18-242, MCA, the amount of restitution is based on the pecuniary loss suffered by the victim and the offender's ability to pay. Section 46-18-243, MCA, defines "pecuniary loss" as follows:

> (a) all special damages, but not general damages, substantiated by evidence in the record, that a person could recover against the offender in a civil action arising out of the facts or events constituting the offender's criminal activities, including without limitation the money equivalent of loss resulting from property taken, destroyed, broken, or otherwise harmed and out-of-pocket losses, such as medical expenses; and
> (b) reasonable out-of-pocket expenses incurred by the victim in filing charges or in cooperating in the investigation and prosecution of the offense.

At the sentencing hearing, the District Court received evidence concerning the County's losses resulting from Korang's activities, Korang's ability to pay restitution and the County's out-of-pocket expenses incurred in prosecuting Korang. On appeal, Korang assigns error to the amount of loss asserted by the County.

Korang points out that the information charging her with theft and tampering with public records or information alleged that she had committed both offenses between July of 1985 and June of 1987. The restitution ordered by the District Court was based in part on the final report of Mary Craig's audit. Craig's report concluded that the pattern of Korang's activities began in 1983 and continued until her suspension in 1987, resulting in losses to the County amounting to approximately $30,250.00. Korang asserts that this amount was not "substantiated by evidence in the record" as required by the statute because she was not being tried

8

for her activities prior to July of 1985. In essence, Korang argues that she has been sentenced for two years of "criminal activities" for which she was not convicted.

The sentencing hearing is part of the record reviewed by this Court when considering an appeal in a criminal case. In fact, by posing this issue, Korang's counsel requests that our review of the record include the sentencing hearing in this case. At the sentencing hearing, the State submitted evidence of the County's loss resulting from Korang's common scheme theft and attendant records tampering. The evidence showed that Korang's common scheme began in 1983, and gave a figure for the total loss suffered by the County "arising out of the facts or events" constituting Korang's common scheme--her "criminal activities." The court's restitution order was based on pecuniary loss substantiated in the record.

Korang's assertion that the statute of limitations bars any claim for amounts taken more than two years prior to the filing of the information is based on § 46-18-244, MCA. That section allows an offender to raise any defense against restitution that he could utilize in a civil action for the losses sought as restitution. According to Korang, one defense available to her was § 27-2-211, MCA, which imposes a two-year period of limitations for an action for penalty, forfeiture, or other statutory liability. We need not address this contention, as Korang did not raise specifically the statute of limitations before the District Court. Section 46-20-701, MCA.

We affirm the decision of the District Court.

_____
Justice

We Concur:

_____
J. A. Turnage
Chief Justice
_____
William E. Hunt Sr.
_____
L. C. Gulbrandson
_____
John Conway Harrison
Justices