No. 98-342

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 269

296 Mont. 453

989 P.2d 407

STATE OF MONTANA

Plaintiff and Respondent,

v.

KAREN MARIE BREWER,

Defendant and Appellant.

APPEAL FROM: District Court of the Eleventh Judicial District,

In and for the County of Flathead,

The Honorable Ted O. Lympus, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Michael H. Keedy, Henning & Keedy, Kalispell, Montana

For Respondent:

Jospeh P. Mazurek, Attorney General, Micheal S. Wellenstein, Assistant Attorney General, Helena, Montana; Thomas J. Esch, Flathead County Attorney, Ed Corrigan, Deputy Flathead County Attorney, Kalispell, Montana

Submitted on Briefs: February 18, 1999

Decided: November 4, 1999

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

¶ **Karen Marie Brewer (Appellant) appeals from the judgment of the District Court**

of the Eleventh Judicial District, Flathead County, entered upon her plea of guilty to two counts of felony forgery. Appellant was sentenced to two consecutive twenty-year terms, the execution of which was suspended subject to the condition that she pay $128,610.15 in restitution to her former employer, Parsons Tractor & Implement Co., (Respondent) and serve six months in the Flathead County Detention Center. We affirm in part, reverse in part.

¶ We restate the issues Appellant presents on appeal as follows:

I Was the trial court's calculation of Appellant's restitution within statutory mandates?

II Did the trial court exceed statutory parameters by imposing interest upon Appellant's restitution obligation?

III Did the trial court follow the requirements of § 46-18-244, MCA, in determining Appellant's ability to pay restitution and in ordering her to make payments according to a schedule developed by her probation officer?

IV Did the trial court err in refusing to rule upon Appellant's post-conviction motions in light of her notice of appeal?

¶ While working as Respondent's bookkeeper, Appellant created unauthorized checks on Respondent's account. Without permission, she then signed the checks in the name of the shop foreman, an authorized signer on the account.

¶ On February 5, 1998, Appellant pleaded guilty to and was convicted of two counts of felony forgery pursuant to a plea agreement with the State of Montana (the State). While the State charged Appellant with only two counts of forgery, one in the amount of $2,413.45, and another for $2,000.00, the record reflects that Appellant may have forged checks on Respondent's account in an amount as high as $96,403.46.

¶ On March 23, 1998, the District Court sentenced Appellant to two consecutive twenty-year terms for the forgery convictions. The court suspended execution of the sentences subject to the condition that Appellant serve six months in the Flathead County Detention Center and pay restitution to Respondent. Crediting Appellant for payments already made, the District Court calculated her restitution obligation at

**$128,610.15, and imposed interest at a rate of 10%. The court based the total amount of Appellant's restitution on the following: 1) $96,403.46, the total of forged checks; 2) $16,240.94 for invoices and pay to Appellant; 3) $2,015.00 paid to accounting firms; 4) $7,932.00 paid to employees; 5) $5,396.70 paid to labor contractors; 6) $225.00 paid to Shiloh Software; 7) $397.05 paid to Anytime Lock.**

**¶ Appellant filed her notice of appeal on May 27, 1998, challenging the District Court's calculation of her restitution and the court's imposition of interest on the unpaid balance while she was incarcerated in the county detention center.**

STANDARD OF REVIEW

**¶ This Court has recently clarified the proper standard of review of criminal sentences. "This Court reviews a criminal sentence only for legality (i.e., whether the sentence is within the parameters provided by statute)."** *State v. Montoya*, **1999 MT 180, ¶15, ___ Mont. ___, ¶15, 983 P.2d 937, ¶15. We overruled any other decisions from this Court which suggest that we also review criminal sentences for an abuse of discretion.** *Montoya*, **¶15.**

I Was the trial court's calculation of Appellant's restitution within statutory mandates?

**¶ This Court may review Appellant's sentence only if Appellant preserved the issue for appeal by objecting to the sentence in district court, or if, on appeal, Appellant alleges her sentence is illegal or exceeds statutory mandates. We adopted the standard in** *State v. Lenihan***;**

> [i]t appears to be the better rule to allow an appellate court to review any sentence imposed in a criminal case, if it is alleged that such sentence is illegal or exceeds statutory mandates, even if no objection is made at the time of sentencing.

*State v. Lenihan* (1979), 184 Mont. 338, 343, 602 P.2d 997, 1000, *See State v. Hatfield*

(1993), 256 Mont. 340, 346, 846 P.2d 1025, 1029.

¶ While she did not raise the issue in District Court, Appellant alleges in her appeal that her sentence violates the requirements of § 46-18-241, MCA, by including in her restitution figure, costs which are not "pecuniary loss" as defined by statute. Because Appellant alleges her sentence exceeds statutory mandates, this Court may review her sentence on appeal.

¶ Appellant argues that "pecuniary loss" as defined by § 46-18-243, MCA, covers only an amount equal to the figure by which she enriched herself at the expense of her victim. She contends that expenses paid by her victim as a result of her crime do not fall within the statutory definition and therefore may not be included in her restitution. As a result, Appellant therefore claims the proper amount of her restitution should be $96,403.46 and not the $128,610.15 as calculated by the District Court. We disagree.

¶ Section 46-18-241, MCA, directs a district court to impose restitution for a victim's pecuniary or economic loss;

> [a] sentencing court shall require an offender to make full restitution to any victim of the offense who has sustained pecuniary loss as a result of the offense, including a person suffering an economic loss as a result of the crime.

Section 46-18-241, MCA (1997). Section 46-18-243 further defines pecuniary loss:

> (a) all special damages, but not general damages, substantiated by evidence in the record, that a person could recover against the offender in a civil action arising out of the facts or events constituting the offender's criminal activities, including without limitation the money equivalent of loss resulting from property taken, destroyed, broken, or otherwise harmed and out-of-pocket losses, such as medical expenses, loss of income, expenses reasonably incurred in obtaining ordinary and necessary services that the victim would have performed if not injured, expenses reasonably incurred in attending court proceedings related to the commission of the offense, and reasonable expenses related to the funeral and burial or crematory services; and (b) reasonable out-of-pocket expenses incurred by the victim in filing charges or in cooperating in the investigation and prosecution of the offense.

Sesction 46-18-243(1), MCA (1997).

¶ **Contrary to Appellant's argument, § 46-18-241, MCA, allows the sentencing court to include in restitution costs paid by the victim as a result the defendant's criminal act, so long as such costs are a "pecuniary loss" as defined by § 46-18-243, MCA. Such loss includes economic loss as a result of the crime, out-of-pocket losses such as medical expenses or, reasonable out-of-pocket expenses incurred by the victim in filing charges or in cooperating in the investigation and prosecution of the offense. Section 46-18-241, 243, MCA (1997).**

¶ **Montana cases have not discussed in depth what costs are properly included as "pecuniary losses". This Court first concluded that restitution may be allowed by payment of the money equivalent of loss as well as out-of-pocket losses in *State v. Morgan* (1982), 198 Mont. 391, 646 P.2d 1177. Morgan was convicted of negligent homicide when he was involved in an automobile accident with another vehicle while under the influence of alcohol. Two occupants in the other vehicle were killed and three seriously injured as a result of the accident. The issue relevant to the case at bar was whether the district court could properly order Morgan to make restitution to the survivors of the accident in the amount of their out-of-pocket losses (for medical expenses).**

¶ **At the time, our statutes did not give significant guidance to district courts for the application or limitations of restitution. *See Morgan,* 198 Mont. at 402, 646 P.2d at 1183. In order to develop an appropriate restitution standard in *Morgan,* we looked to § 3-601 of The Uniform Law Commissioners Model Sentencing and Corrections Act, (1979), for guidance. *Morgan,* 198 Mont. at 402, 646 P.2d at 1183. In *Morgan*, the district court had not indicated the out-of-pocket expenses or losses for which restitution was being made. We therefore concluded that it was not possible for this Court to determine if the order of restitution was proper. We held that the district court could provide for payments to those suffering out-of-pocket losses for medical expenses not in excess of the actual money equivalent and remanded to the district court for resentencing on that point. *Morgan,* 198 Mont. at 402-03, 646 P.2d at 1183.**

¶ **After our decision in Morgan, the Legislature codified the Model Act at § 46-18-241, MCA, which exists in a similar form today. Since the enactment of the restitution statute, this Court has held that a sentencing court's restitution order was based on pecuniary loss where it arose out of the facts or events constituting the**

defendant's criminal activities. *See State v. Korang* (1989), 237 Mont 390, 396, 773 P.2d 326, 329.

¶ Korang, an employee at the Lewis and Clark County Clerk and Recorder's Office, collected fees for recording documents and other services. Korang had bookkeeping responsibilities associated with this position, including depositing collected fees with the County Treasurer's Office. When the Clerk and Recorder became convinced Korang was taking money and falsifying book entries, a certified public accountant was hired to perform an audit of the books. Based upon this audit, Korang was charged and convicted of felony theft and felony tampering with public records or information. *Korang*, 237 Mont at 392, 773 P.2d at 327. We stated that "the evidence...gave a figure for the total loss suffered by the County 'arising out of the facts or events' constituting Korang's common scheme--her 'criminal activities.'" *Korang*, 237 Mont at 396, 773 P.2d at 329. Although we focused on the statutory requirement included in § 46-18-243, MCA, that the restitution figure "arise out of the facts or events constituting the offender's criminal activities," we did not explain specifically what costs were included in the total restitution amount in that case.

¶ As in *Korang*, Respondent's out-of-pocket expenses included in the District Court's restitution order are a figure for the "total loss" suffered by Respondent arising out of the facts or events of Appellant's criminal activities. *See Korang*, 237 Mont. at 396, 773 P.2d at 329, § 46-18-243(1)(a), MCA (1997). The restitution order included Respondent's out-of-pocket expenses for payments to his employees, labor contractors, a software company, accounting firms, and a locksmith, the costs of which arose out of Appellant's criminal activities. In contrast to the facts in *Morgan*, where this Court concluded that we could not determine whether the restitution amount was proper due to insufficient facts in the district court's order, the court's restitution calculation in the instant case described with particularity the out-of-pocket expenses for which restitution was being made.

¶ Appellant does not contend that the more than $96,000 she embezzled is not a pecuniary loss under § 46-18-241, MCA. Rather, her argument is "the fact that Montana's statute <u>excludes</u> general damages appears to militate against the inclusion in her restitution obligation of amounts above and beyond the total" she stole from Respondent (emphasis original). Appellant improperly characterizes Respondent's

out-of-pocket loss, which occurred as a result of her criminal activities, as general damages.

¶ Respondent paid his employees, labor contractors, Shiloh Software, Anytime Lock, and an accounting firm in excess of $15,000 in an attempt to repair the damage Appellant caused through her theft. Such expenses directly resulting from Appellant's criminal activities are not general damages such as pain and suffering, and disfigurement, which are disallowed under the statute, but are special damages contemplated by the statute as pecuniary loss. *See* § 46-18-243(1), MCA (1997), Model Act, Comment to (e).

¶ In addition to the actual amount of money Appellant stole from Respondent, these damages are recoverable by Respondent in a civil action against Appellant as damages arising out of the facts or events constituting Appellant's criminal activities. Section 46-18-243(1)(a), MCA, allows for restitution for such losses "without limitation." As a result, Appellant may assert any defense she would be entitled to assert in a civil action brought by the victim for compensation. See § 46-18-244(2), MCA, and Model Act, Comment to (d).

¶ Contrary to Appellant's argument, Montana's restitution statute does not confine district courts' restitution calculations to a figure by which a defendant enriches herself at her victim's expense but rather empowers them to impose restitution for a victim's pecuniary loss which, as defined by statute, includes out-of-pocket losses. The statute also provides for restitution to "victims of the offense who have suffered an *economic loss as a result of the crime*." Section 46-18-241, MCA (1997) (emphasis added).

¶ Appellant claims "cases from other jurisdictions appear to stand for the proposition that compensable losses incurred by crime victims must be confined to the damages actually and directly inflicted by the offender." Appellant cites numerous cases from other jurisdictions in an attempt to show that damages incurred as a result of the criminal act are not awarded in restitution cases. By way of contrast, the State cites still other jurisdictions holding that costs arising from the crime, such as those incurred by a victim for reconstructing his books due to the conduct of the defendant, are properly included in restitution as pecuniary damages.

¶ We determine that it is unnecessary for this Court to rely on case law from other

jurisdictions because Montana case law is sufficient to decide this issue. Respondent paid accounting firms, employees, labor contractors, a software company, and a locksmith in an attempt to reconstruct his books and repair damage resulting from Appellant's criminal act. Those expenses are out-of-pocket losses within the intent of § 46-18-241, MCA, and are therefore properly includable in the District Court's restitution calculation. We conclude the District Court did not exceed its statutory authority in requiring Appellant to pay restitution based upon out-of-pocket losses substantiated by evidence in the record.

¶ As Appellant argues and the State concedes, wages paid to Appellant over the course of her employment by Respondent do not constitute pecuniary loss to Respondent, and are not recoverable in a civil action against Appellant. As a result, we hold that wages Respondent paid to Appellant are not recoverable as restitution.

II Did the trial court exceed statutory parameters by imposing interest upon Appellant's restitution obligation?

¶ Appellant argues that the trial court abused its discretion in ordering her to pay 10% interest on her restitution obligation during the term of her six months confinement. She contends that if interest is allowed to accrue at all, it should be allowed only after she is released from confinement. Appellant also claims that interest on her restitution is *per se* an abuse of discretion insofar as it exceeds Respondent's pecuniary loss.

¶ As we have stated above, the proper standard of review of a criminal sentence is for legality (i.e., whether the sentence is within the parameters provided by statute). We have expressly overruled other decisions from this Court suggesting that we also review criminal sentences for an abuse of discretion. *Montoya*, ¶15.

¶ We note that the issue of whether interest may be properly applied to restitution under § 46-18-241, MCA, is one of first impression for this Court. Interest is not expressly provided for by the restitution statute. However, the statute provides for restitution to a victim who has sustained pecuniary loss, "including economic loss as a result of the crime." Section 46-18-241, MCA (1997). Section 46-18-243, MCA, also includes in its definition of pecuniary loss, restitution for "all special damages, but

not general damages, substantiated by evidence in the record, that a person could recover against the offender in a civil action arising out of the facts or events constituting the offender's criminal activities." Section 46-18-243, MCA (1997).

> ¶ **Respondent could recover interest on Appellant's restitution in several ways. Because Respondent lost the use of the $96,403.46 stolen by Appellant, as well as the more than $15,000 he paid to try to repair damage done to his financial records, Respondent could recover interest as an "economic loss as a result of a crime." Section 46-18-241, MCA. He could also recover interest on any amount awarded him in a civil action against Appellant arising out of Appellant's theft under § 27-1-210, MCA, which authorizes interest on torts. (1)...in an action for recovery on an injury as defined in 27-1-106, a prevailing claimant is entitled to interest at a rate of 10% on any claim for damages awarded that are capable of being made certain by calculation... .**

Section 27-1-210(1), MCA (1997). Because interest is a special damage, available to Respondent in a civil action against Appellant, interest is properly applied to Appellant's restitution under § 46-18-241, MCA. The interest is not allowed on damages such as pain and suffering, mental anguish or suffering, or punitive damages. Section 27-1-210(2), MCA (1997).

¶ **We take this opportunity to note that the Model Act used both as a directive in providing a standard for restitution in *Morgan* and by the Legislature in enacting § 46-18-241, MCA, provides for "interest on the amount of pecuniary loss from the time of loss until payment is made." Model Act, (e)(3). This provision is intended to be included in restitution statutes in those states authorizing prejudgment interest in civil cases. As the Comment to the model provision explains, "[t]he rule regarding interest should be the same both in tort and for the purposes of restitution." See Model Act, Comment to (e)(3). However, while § 27-1-210, MCA, provides for interest on prevailing claims in civil cases, no corresponding provision for interest on restitution exists in § 46-18-241, MCA.**

¶ **We invite the Legislature to rectify the current incongruity between § 27-1-210, MCA, which provides for prejudgment interest on civil tort claims and § 46-8-241, MCA, which does not expressly provide for interest on restitution.**

¶ **Finally, we agree with the District Court that "[Respondent] is not in the lending business, and even if he were in the lending business, he would not make any such loans without attaching to it interest." As a result of Appellant's criminal activities, Respondent lost the use of the amount of money stolen from him and will continue to do so until the money is repaid**.

¶ We now hold that interest is properly includable on restitution awards under § 46-18-421, MCA. The District Court's imposition of 10% interest on Appellant's restitution was within statutory mandates.

III Did the trial court follow the requirements of § 46-18-244, MCA, in determining Appellant's restitution amount?

¶ **Appellant argues that the District Court did not consider her present ability to repay when it imposed interest on her restitution. The language of § 46-18-244, MCA, clearly instructs the sentencing court to contemplate only a defendant's *future ability* to pay restitution. See § 46-18-244(2), MCA (1997). Appellant also argues that in calculating the amount of her restitution obligation, the District Court did not properly consider her financial resources and future ability to repay such restitution. She further claims the District Court did not specify the amount, method, and time of each payment as required by § 46-18-244, MCA. That statute requires the sentencing court to:**

> (1)...specify the amount, method, and time of each payment to the victim and may permit payment in installments. (2) In determining the amount, method, and time of each payment, the court shall consider the financial resources and future ability of the offender to pay.

Section 46-18-244(1),(2), MCA. The court is also required under § 46-18-242, MCA, to:

> (1)...order the probation officer, restitution officer, or other designated person to include in the presentence investigation and report: ... documentation of the offender's financial resources and future ability to pay restitution ... . [T]he court may receive evidence of the offender's ability to pay and the victim's loss at the time of sentencing.

No

¶ Appellant testified at her sentencing hearing that she had obtained two jobs at which she was working about 55 hours per week and was taking home about $1,200 per month after taxes. She explained that her husband's wages covered the couple's household expenses. As a result, Appellant testified that she intended to put all her wages toward restitution at the rate of at least $1000 per month. At the time of sentencing, Appellant had paid Respondent nearly $6000. After considering the information in the presentence investigation and report, and the testimony presented at Appellant's sentencing hearing, the District Court sentenced Appellant to repay the above referenced amount of restitution, with a schedule of repayment to be arrived at between Appellant and her probation officer.

¶ We conclude that based on Appellant's own testimony at her sentencing hearing regarding her earning capacity, the payments she had already made to Respondent, and her intent and ability to continue to make such payments, the District Court properly considered Appellant's financial resources and future ability to pay restitution for Respondent's pecuniary loss.

¶ Appellant also raises the claim that the District Court did not properly specify the amount, method, and time of each of her restitution payments to Respondent. Appellant failed to first raise this argument in District Court and does not argue on appeal that the District Court's sentence is illegal or exceeds statutory mandates on such grounds. Appellant's claim is therefore not properly before this Court, and we will not consider it on appeal. Sections 46-20-104(2), 701(2), MCA. *See State v. Goulet* (1996), 277 Mont. 308, 311-12, 921 P.2d 1245, 1247.

IV Did the trial court err in refusing to rule upon Appellant's post-conviction motions in light of Appellant's notice of appeal?

¶ This Court's order of August 12, 1998, granting in part and denying in part Appellant's motion for supervisory control has rendered this portion of Appellant's claim moot. Therefore, we need not address this issue. *Turner v. Mountain Engineering and Const., Inc.* (1996), 276 Mont. 55, 915 P.2d 799.

¶ **We conclude that the District Court erred in including as a part of Appellant's restitution, wages paid to her by Respondent during the term of her employment, and reverse on that issue. We affirm the District Court on all other grounds.**

¶ **Affirmed in part and reversed in part.**

/S/ WILLIAM E. HUNT, SR.


We Concur:

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER