No. 03-215

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 131

STATE OF MONTANA,

       Plaintiff and Respondent,

  v.

LEE NORMAN THOMPSON,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and for the County of Cascade, Cause No. BDC-02-180,
The Honorable Julie Macek, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

          Meghan Lulf, Deputy Public Defender, Great Falls, Montana

       For Respondent:

          Hon. Mike McGrath, Attorney General; Ilka Becker,
Assistant Attorney General, Helena, Montana

          Brant Light, Cascade County Attorney; Susan Weber, Chief Deputy Cascade
County Attorney; John Parker, Deputy County Attorney, Great Falls,
Montana

Submitted on Briefs:  October 30, 2003

Decided:   May 21, 2004

Filed:

_____
Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 On April 30, 2002, Lee Norman Thompson (Thompson) was charged by Information with Felony Theft, in violation of §§ 45-6-301(1)(a), (8) and (9), MCA (2001). He entered into a plea agreement, and on February 26, 2003, the District Court sentenced him to a three year deferred sentence and ordered him to pay $4,337 in victim restitution. He appeals and we affirm. The issue presented on review is whether the District Court abused its discretion when it ordered Thompson to pay the cost to rekey the commercial building from which he committed theft.

## BACKGROUND

¶2 Fran Albrecht (Albrecht), manager of the Columbus Center in Great Falls, testified that she hired Thompson in November 2000 to perform maintenance duties for the building. The Columbus Center has approximately forty tenants. As a maintenance man for the building, Thompson had keys for the entire building, including individual tenant units. While employed at the Columbus Center, Thompson allegedly stole numerous tools and pawned them at a local pawn shop. Once discovered, Albrecht fired him and eventually filed a complaint against him.

¶3 On August 21, 2002, Thompson pled guilty and the court scheduled a sentencing hearing and ordered preparation of a Pre-Sentence Investigation Report (PSI). Regarding restitution, the PSI recommended that Thompson pay $2,142. However, Albrecht sent a victim impact letter after the probation officer submitted the PSI to the court requesting that the court consider imposing restitution for rekeying the Columbus Center due to the theft.

2

She was unsure if Thompson had duplicate keys made and felt it necessary to rekey the whole building to insure security for the existing tenants.

¶4 At the sentencing hearing, Thompson stipulated to restitution for the stolen items in the amount of $1,697 to Columbus Center and $355 to First National Pawn, however, he objected to the $2,285 cost of rekeying the common doors at the Columbus Center. Albrecht testified that since the theft, tenants have indicated that their level of security has been reduced as a result of Thompson's theft. Subsequently, management found it necessary to reinstate a higher level of security. She also testified that during his employ, Thompson accessed a tenant's office without permission to make a personal phone call, and after the theft, this tenant vacated the building. She presented documentation to the court to substantiate the cost of rekeying the building: one bid for replacement of four common doors and 300 keys to this system at $2,285, and another bid for an electronic key system at $5,000.

¶5 While Albrecht testified that the Columbus Center had contemplated replacement of the system prior to discovery of Thompson's theft, she was now forced to rekey the building and only asked for restitution in the amount of rekeying the common doors, not the more expensive electronic key system.

¶6 After Albrecht's and Thompson's testimony, the District Court required Thompson to pay for the Columbus Center rekeying in the amount of $2,285 in addition to the amount he stipulated to regarding the tools. It did so under the guise that the rekeying requirement was a direct result of Thompson's theft, the tenants in the building deserved to have security

3

in the building, and the fact that he had entered one of the tenant's space was a valid reason for the tenants to have some concerns about Thompson's access to the building. Thompson appeals.

STANDARD OF REVIEW

¶7 This Court reviews a district court's imposition of a sentence for legality only. *State v. Mason*, 2003 MT 371, ¶ 19, 319 Mont. 117, ¶ 19, 82 P.3d 903, ¶ 19. The standard of review of the legality of a sentence is whether the sentencing court abused its discretion. *State v. Meeks*, 2002 MT 246, ¶ 15, 312 Mont. 126, ¶ 15, 58 P.3d 167, ¶ 15. In reviewing the court's findings of fact as to the amount of restitution, our standard of review is whether those findings are clearly erroneous. *State v. Setters*, 2001 MT 101, ¶ 16, 305 Mont. 253, ¶ 16, 25 P.3d 893, ¶ 16.

DISCUSSION

¶8 Whether the District Court abused its discretion when it ordered Thompson to pay the cost to rekey the commercial building from which he committed theft.

¶9 Thompson argues that according to case law and the plain language of the statute, victims are only entitled to recover from any pecuniary loss sustained as a result of his crime, and as such, mandating restitution for rekeying the building went beyond pecuniary loss and enriched the victim beyond its damages. Central to his argument, Thompson clarifies that he pled guilty only to theft of tools taken from the maintenance area of the Columbus Center, not theft of anything from the building tenants or damage to the door lock system on the building or individual tenant offices. He exemplifies this by highlighting that neither the

4

Information nor the evidence presented in the case allege damage to locks or theft from tenants. Therefore, he claims the restitution ordered must not be in excess of the damages caused by his conduct, and here the damages suffered were those related to stolen property. Thompson adds that the victim was already contemplating replacing the security system prior to the theft, and this restitution award for rekeying is in excess of the damages caused by his criminal conduct.

¶10 To further support his claim, Thompson states that the court ordered the rekeying based solely upon tenants' alleged feeling of a lessened sense of security. He asserts that Albrecht never stated or attempted to quantify the economic loss sustained from this vulnerable feeling. Absent physical damage to the lock, Thompson maintains that the statute does not allow for rekeying every victim's doors simply because a theft occurred and it could happen again.

¶11 Conversely, the State relies upon *State v. Brewer*, 1999 MT 269, 296 Mont. 453, 989 P.2d 407, to support its argument that rekeying the entire building in order to remedy the Columbus Center's loss of security directly resulted from Thompson's criminal conduct. It asserts that such economic loss was quantified by the cost of replacing the locks and tenants' keys. Furthermore, the State maintains that it was irrelevant as to whether Columbus Center contemplated installing a new electronic key system prior to the theft incidents; it became necessary to rekey the Columbus Center as a result of Thompson's criminal conduct.

¶12 Section 46-18-241, MCA, directs a district court to mandate restitution when the victim has sustained pecuniary or economic losses. *Brewer*, ¶ 11. Section 46-18-243(1)(a),

MCA, defines pecuniary loss as "all special damages, but not general damages, substantiated by evidence in the record, that a person could recover against the offender in a civil action arising out of the facts or events constituting the offender's criminal activities, including without limitation . . . out-of-pocket losses . . . ."

¶13    This Court has said that a sentencing court's restitution order is based upon pecuniary loss where it arose out of the facts or events constituting the defendant's criminal activities. *State v. Korang* (1989), 237 Mont. 390, 396, 773 P.2d 326, 329-30. In *Brewer*, we examined a victim's claim of out-of-pocket expenses within the definition of pecuniary loss. While working as a bookkeeper, Brewer proceeded to forge checks on her employer's account in excess of $96,000. *Brewer*, ¶ 4. After pleading guilty, the court ordered her to pay restitution to her employer in the amount of $128,610.15 based on the total amount of forged checks, in addition to previous invoices and wages paid to Brewer, amounts paid to accounting firms, wages paid to employees, fees paid to labor contractors, and amounts paid to a software company and a locksmith. *Brewer*, ¶ 5.

¶14    Brewer's employer had detailed the costs to the court as expenses disbursed to repair the damage caused by Brewer through her theft. *Brewer*, ¶ 17. As such, this Court determined from the record that the district court had described with particularity the out-of-pocket expenses for which the restitution was being made. *Brewer*, ¶ 19. Therefore, with the exception of the amount paid to Brewer over the course of her employment, we agreed with the District Court that the balance of Brewer's employer's out-of-pocket expenses exemplified the total loss suffered by them arising out of the facts or events of Brewer's

6

criminal activities; specific damages allowed under the restitution statute. *Brewer*, ¶ 19.

¶15   At the sentencing hearing, Albrecht testified to the necessity of rekeying the building to heighten security as a result of Thompson's theft. Furthermore, she testified and provided a quote of $2,285 as the cost of replacing the common door locks as well as buying 300 keys for those locks in order to secure the building again. The District Court specifically found that the reason Columbus Center chose to rekey the building was a direct result of Thompson's conduct.

¶16   Therefore, we conclude that such expense is an out-of-pocket loss directly resulting from Thompson's criminal activity. This is not a general damage, but a special damage as contemplated in the statute. *See* § 46-18-243, MCA. This Court is cognizant of Thompson's slippery slope argument as to the tenant vulnerability, however, we fail to see that rekeying the Columbus Center under these specific circumstances was unreasonable. Therefore, the District Court properly included this expense in the restitution calculation.

¶17   We conclude the District Court did not abuse its discretion in requiring Thompson to pay restitution based upon out-of-pocket losses substantiated by evidence in the record. We affirm.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY

7

/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ PATRICIA O. COTTER
/S/ JIM RICE

Justice W. William Leaphart dissenting.

¶18    I dissent.  The cost of rekeying the entire commercial building was not a legitimate out-of-pocket expense occasioned by Thompson's criminal activity.  Section 46-18-243, MCA.  As Thompson correctly points out, there was no evidence of any damage to the lock system nor any evidence of theft from any of the tenants.  The sole basis for imposing the cost of rekeying was the tenants' alleged "feeling" of insecurity.  If allaying subjective feelings of insecurity suffices as a basis for restitution, no doubt the next theft victim will request a salary for a full-time security guard or a state-of-the-art alarm system.

/S/ W. WILLIAM LEAPHART