No. 03-487

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 203

STATE OF MONTANA,

        Plaintiff and Respondent,

  v.

LEONARD F. KROLL,

        Defendant  and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 02–0655
Honorable Russell C. Fagg, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Matthew C. Claus, Attorney at Law, Bozeman, Montana

        For Respondent:

        Hon. Mike McGrath, Attorney General; C. Mark Fowler,
Assistant Attorney General, Helena, Montana

        Dennis Paxinos, Yellowstone County Attorney; Margaret
Gallagher, Deputy County Attorney, Billings, Montana

Submitted on Briefs:  March 2, 2004

Decided:  August 3, 2004

Filed:

_____

Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Leonard Kroll (Kroll) appeals from the judgment entered by the Thirteenth Judicial District Court, Yellowstone County, imposing certain conditions as to the suspended portion of his sentence. We affirm in part, reverse in part, and remand for further proceedings.

¶2     The following issues are presented on appeal:

¶3     1. Did the District Court err by imposing conditions in the written judgment that it did not impose at the oral pronouncement of sentence?

¶4     2. Did the District Court err by imposing conditions of sentence that were not reasonably related to the underlying offense?

### FACTUAL AND PROCEDURAL BACKGROUND

¶5     Leonard Kroll was charged by Information in the Thirteenth Judicial District Court, Yellowstone County, with the felony offense of issuing bad checks as part of a common scheme. The affidavit in support of the motion to file the information provides the following background information: Between the dates of December 22, 1993, and January 17, 1995, Kroll had presented numerous checks drawn from an account which had been "force-closed" by the bank the previous year. Using the fraudulent checks, Kroll purchased hundreds of mail-order items from national merchants, including appliances, computers, collectibles, various coin collections, bronzes, and figurines. It was Kroll's practice to write the checks for more than the purchase amount in order to obtain a refund from the company. He also returned many of the items for cash refunds.

2

¶6    On January 19, 1995, Billings Police Department Detective Dave Comfort (Detective Comfort), obtained a search warrant for Kroll's residence. During the search, the detective uncovered $50,000 to $60,000 worth of goods purchased from the various mail-order merchants, including a substantial amount of pornographic materials. Detective Comfort also uncovered boxes of blank checks and discovered sealed envelopes ready to be mailed which held checks to purchase additional mail-order items. Kroll admitted to Detective Comfort that he had purchased the various items with checks from an account that had been closed. Although Kroll knew that presenting bad checks was illegal, he explained to the detective that he was out of work and the scheme seemed like an easy way to make money.

¶7    Kroll was arrested following the search and released later that same day with a notice to appear in Justice Court several days later. However, Kroll fled from the Billings area the following day. His whereabouts were unknown until October 28, 2002, when he was transported to Billings after being arrested out of state.

¶8    On September 2, 2002, Kroll was charged in District Court with the offense of issuing a bad check as part of a common scheme, a felony in violation of § 45-6-316, MCA. Kroll initially pleaded not guilty to the offense, but later changed his plea to guilty after entering a plea agreement with the State. Pursuant to the plea agreement, Kroll agreed to plead guilty to one count of issuing a bad check in exchange for the State's recommendation of an entirely suspended sentence of ten years to the Montana State Prison and payment of restitution.

¶9 A pre-sentence investigation report (PSI) was thereafter prepared, concurring in the State's recommendation for sentence and outlining various conditions recommended for probation. Among those conditions, the PSI recommended that Kroll not possess or consume any alcohol, that he obtain a chemical dependency evaluation, and refrain from entering casinos or playing any games of chance. The PSI further recommended Kroll undergo a sexual risk assessment by a member of the Montana Sexual Offender Treatment Association, since many of the materials purchased with the bad checks included pornography.

¶10 The matter proceeded to sentencing on April 29, 2003. Kroll's defense counsel objected to the imposition of the above-referenced conditions. After hearing arguments by the parties, the District Court orally pronounced sentence, adopting the conditions recommended in the PSI, ordering Kroll to pay $13,574.01 in restitution, and sentencing him to ten years at the Montana State Prison, with all but 180 days suspended.

¶11 On May 19, 2003, the District Court reduced the oral pronouncement of sentence to a written judgment which deviated from the oral sentence in several respects. First, the written judgment omitted the condition requiring Kroll to undergo a sexual risk assessment. It also added several conditions not previously addressed at sentencing, which, for the most part, were stock requirements of all probationers: that he conduct himself in a law-abiding manner; that he submit to reasonable searches of his person, vehicle, or premises whenever requested to do so by his probation officer; that he not own or possess any firearms or deadly weapons; that he maintain full-time, legitimate employment; that he have no contact with the

4

victim(s); and that he pay a supervision fee to the Clerk of District Court. Kroll appeals from the oral and written judgments, and the imposition of these various conditions.

## STANDARD OF REVIEW

¶12    The Supreme Court reviews a district court's imposition of sentence for legality only. *State v. Thompson*, 2004 MT 131, ¶ 7, 321 Mont. 332, ¶ 7, 91 P.3d 12, ¶ 7. This is a question of law, which we review to determine whether the court's interpretation of the law is correct. *Dept. of Corrections v. Phelps*, 2000 MT 18, ¶ 8, 298 Mont. 135, ¶ 8, 995 P.2d 963, ¶ 8.

## DISCUSSION

¶13    **Did the District Court err by imposing conditions in the written judgment that it did not impose at the oral pronouncement of sentence?**

¶14    Kroll argues that the District Court's imposition of the stock sentencing conditions (that is, condition numbers 3, 6, 8, 13, 14, and 20) is unlawful because these conditions were imposed only in the written judgment, and were not imposed in open court. In response, the State submits that Kroll waived his right to complain about the imposition of these conditions because he failed to seek modification of the written judgment within the time provided by § 46-18-116, MCA. For the reasons set forth below, we conclude the District Court did not err in imposing the foregoing conditions.

¶15    In *State v. Lane*, 1998 MT 76, ¶ 40, 288 Mont. 286, ¶ 40, 957 P.2d 9, ¶ 40, we held that the oral pronouncement of a criminal sentence in the presence of the defendant is the "legally effective sentence and valid, final judgment" and that the written judgment is merely

evidence of the oral sentence. Thus, we concluded, in the event of a conflict between the oral pronouncement of sentence and the written judgment and sentence, the oral pronouncement of sentence controls. *Lane*, ¶ 48.

¶16 Following this Court's decision in *Lane*, the Legislature amended the statutes pertaining to correction of the written judgment. Section 46-18-116, MCA,[1] provides in relevant part:

> (2) If a written judgment and an oral pronouncement of sentence or other disposition conflict, the defendant or the prosecutor in the county in which the sentence was imposed may, within 120 days after filing of the written judgment, request that the court modify the written judgment to conform to the oral pronouncement. The court shall modify the written judgment to conform to the oral pronouncement at a hearing, and the defendant must be present at the hearing unless the defendant waives the right to be present or elects to proceed pursuant to 46-18-115. The defendant and the prosecutor waive the right to request modification of the written judgment if a request for modification of the written judgment is not filed within 120 days after the filing of the written judgment in the sentencing court.

Pursuant to this statute, the State maintains that Kroll waived his right to modify the written judgment because he failed to request modification within 120 days from the date of filing the written judgment and, further, argues that the statute is constitutionally sound. Kroll counters that such waiver would allow for modification of the oral sentence outside the presence of the defendant and, on that basis, argues that the statute violates his constitutional right to be present at all critical stages of the proceeding. At the heart of each parties' argument is the assumption that after the expiration of the 120-day period, the written

---

[1]Section 46-18-116, MCA (2001) became effective March 20, 2001, and applies retroactively to all cases that were pending on direct review or that were not yet final at the time of its enactment.

judgment is *presumed* correct. However, the plain language of the statute does not dictate such a conclusion.

¶17    It is well established that in construing statutes, the function of the court is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted. *Neal v. State*, 2003 MT 53, ¶ 12, 314 Mont. 357, ¶ 12, 66 P.3d 280, ¶ 12; *State v. Crane* (1989), 240 Mont. 235, 238, 784 P.2d 901, 903; *Security Bank & Trust Co. v. Connors* (1976), 170 Mont. 59, 67, 550 P.2d 1313, 1317; § 1-2-101, MCA. Where the plain language of the statute is clear and unambiguous, no further interpretation is required. *Small v. Board of Trustees, Glacier County School Dist. No. 9*, 2001 MT 181, ¶ 21, 306 Mont. 199, ¶ 21, 31 P.3d 358, ¶ 21.

¶18    To conclude in this case that § 46-18-116, MCA, gives a presumption of correctness to the written judgment after 120 days would require this Court to ignore the well established rules of statutory construction by adding something in terms or in substance to the existing statute. Section 46-18-116, MCA, creates no presumption in favor of the written judgment over the oral pronouncement. It merely provides that the written judgment may be modified to conform to the oral pronouncement when a conflict exists between the two. The statute in no way supercedes or modifies this Court's holding in *Lane*, which established the oral pronouncement of sentence as the legally effective and valid final judgment. If the 2001 legislative amendments to § 46-18-116, MCA, were intended to modify *Lane*, the language employed did not accomplish that purpose. The oral pronouncement of sentence continues to control in situations in which a conflict exists between the oral and written judgments.

7

Section 46-18-116, MCA, simply provides the parties an avenue for conforming the written judgment to the oral pronouncement of sentence.

¶19 Since the oral pronouncement of sentence governs, the State's contention that Kroll waived his right to modify the written judgment pursuant to § 46-18-116, MCA, is rendered moot, as is its argument that this issue was not preserved for appeal. We have held that even when a criminal defendant fails to contemporaneously object at sentencing, this Court will accept jurisdiction of a timely filed appeal which alleges that a sentence is illegal or exceeds statutory authority. *State v. Brister*, 2002 MT 13, ¶ 16, 308 Mont. 154, ¶ 16, 41 P.3d 314, ¶ 16 (discussing *State v. Lenihan* (1979), 184 Mont. 338, 602 P.2d 997). Furthermore, we need not address the parties' arguments concerning the constitutionality of § 46-18-116, MCA, because these arguments are likewise rendered moot under our present holding. Accordingly, we turn to the question of whether the imposition of certain sentencing conditions not announced in open court but nonetheless contained in the written judgment was lawful.

¶20 As Kroll notes, this Court has previously decided cases under *Lane* in which the written judgment did not precisely conform to the oral pronouncement of sentence. *See State v. Waters*, 1999 MT 229, 296 Mont. 101, 987 P.2d 1142; *State v. Simpson*, 1999 MT 259, 296 Mont. 335, 989 P.2d 361. In *State v. Johnson*, 2000 MT 290, 302 Mont. 265, 14 P.3d 480, we examined our holdings in *Lane*, *Waters*, and *Simpson* and concluded that a problematic result had emerged: the rule that a subsequent written judgment may not conflict with the oral pronouncement of sentence was vague, and served to confuse what was truly

8

at issue–whether a written judgment had, without notice, substantively increased a defendant's criminal sentence which had been previously imposed in open court. *Johnson*, ¶ 24. We therefore refined our previous holdings in *Lane*, *Waters*, and *Simpson*, and devised a new rule. That is, when determining whether the written judgment is unlawful by reason of its non-conformance with the oral pronouncement of sentence, we need determine (1) whether the defendant was afforded the opportunity to respond to its inclusion upon sufficient notice at sentencing, and (2) whether that portion of the written judgment substantively increases the defendant's loss of liberty or the defendant's sacrifice of property. *Johnson*, ¶ 24.

¶21 Applying the *Johnson* rule to this case, we conclude the District Court did not err in imposing the following conditions of suspended sentence:

> 3. The defendant shall conduct himself in a law-abiding manner and shall not violate any law of the United States or of the State of Montana or any other state, or the ordinance of any city or town of this State or any other state during said term.
> . . . .
>
> 6. The defendant is hereby required to submit to reasonable searches of his person, vehicle, or premises whenever requested to do so by his Probation Officer or by a Law Enforcement Officer at the direction of his Probation Officer. The purpose of these searches is to help the defendant in his rehabilitation.
> . . . .
>
> 8. The defendant shall not own, possess, or be in control of any firearms or deadly weapons, including black powder, as defined by State or Federal Law.
>
> . . . .

9

13. The defendant shall secure and maintain full-time, legitimate employment and defendant shall participate in any educational or vocational training programs as directed by his Supervising Officer and shall not terminate such programs without prior approval from his Supervising Officer.

14. The defendant shall have no contact with the victim(s) and/or the family of this criminal cause in any manner: in person, by telephone, personal and/or third party, computer generated or in writing.

. . . .

20. The defendant shall pay a supervision fee to the Clerk of District Court pursuant to § 46-23-1031, MCA. . . .

¶22   Each of the foregoing sentencing conditions are stock requirements for probationers and individuals subject to a suspended sentence. In *Johnson*, we examined similar "civil restriction" conditions and, finding no evidence on the record that these conditions substantively increased the defendant's loss of liberty or sacrifice of property imposed under the oral sentence, concluded that the imposition of such conditions within the written judgment was lawful. *Johnson*, ¶ 36.

¶23   Similarly, here, we conclude that the foregoing sentencing conditions are "civil restriction" conditions which do not substantively increase Kroll's loss of liberty or sacrifice of property. While we recognize the District Court did not recite these conditions verbatim at sentencing, or specifically incorporate them into Kroll's sentence by reference to the PSI, neither are we inclined to elevate form over substance or otherwise impose hyper-technical rules at sentencing. In this case, Kroll has not demonstrated any actual prejudice as a result of the imposition of these conditions. Given the standard nature of the sentencing conditions at issue in this case, we conclude that Kroll suffered no actual prejudice by the failure of the

10

District Court to impose the conditions at the oral pronouncement of sentence. We caution, however, that the imposition of a condition which is not a standard condition will run afoul of this Court's holding in *Lane*. Nonetheless, because the conditions imposed in this case are standard conditions, we uphold them as lawful.

¶24 **Did the District Court err by imposing conditions of sentence that were not reasonably related to the underlying offense?**

¶25 In addition to the District Court's oral imposition of a condition requiring Kroll to obtain a sexual risk assessment, Kroll appeals from the following sentencing conditions imposed in the written judgment:

> 1. The defendant shall not frequent any place where intoxicating liquor or beer is the chief item of sale nor shall he use intoxicants or beer; nor shall he purchase, use, possess, give, sell or administer any narcotic or dangerous drugs or have in his possession same without proper prescription by a doctor.
>
> 2. The defendant shall not enter into any game of chance nor shall he frequent any place where gambling may be taking place.
>
> . . . .
>
> 10. The defendant at his expense shall obtain a chemical dependency assessment/evaluation by a state approved treatment provider/facility and follow all treatment recommendations.
>
> . . . .
>
> 18. Defendant shall not enter any casinos or play any games of chance.

The State concedes that conditions 1 and 10 are unrelated to the underlying offense and should be stricken from the judgment. Thus, only the conditions pertaining to gambling and the sexual risk assessment are at issue here.[2]

¶26 Kroll contends the District Court erred in restricting his right to gamble and enter casinos, and in requiring him to obtain a sexual risk assessment. He argues that these conditions lack a correlation to the crime for which he was convicted.

¶27 In response, the State contends that the conditions restricting Kroll's right to gamble and enter casinos are reasonable given Kroll's demonstrated willingness to enter into "easy money schemes," and his own admission that he knew presenting bad checks was illegal, but that "he was out of work and the scheme was an easy way to get money."

¶28 Sections 46-18-201 and -202, MCA,[3] allow for the imposition of sentencing restrictions or conditions that are "reasonable" and that the court considers necessary "to obtain the objectives of rehabilitation and the protection of the victim and society." In *State v. Ommundson*, 1999 MT 16, ¶ 12, 293 Mont. 133, ¶ 12, 974 P.2d 620, ¶ 12, we reversed a condition of a district court sentence requiring the defendant, who had been convicted of driving under the influence of alcohol, to participate in a sex offender treatment program

---

[2]We note that, as a threshold matter, the State again argues that Kroll waived his right to complain about the District Court's imposition of these sentencing conditions because he failed to modify the written judgment pursuant to § 46-18-116, MCA. However, because we conclude in the foregoing issue that the oral pronouncement of sentence governs, we need not address the State's arguments concerning waiver.

[3]Under the law applicable to Kroll's charges, the relevant statutory provisions were §§ 46-18-201(1)(b) and -202, MCA (1993).

because we concluded there was no nexus between the requirement that the defendant participate in a sex offender program and the charged DUI offense.

¶29 Citing to our decisions in *State v. Black* (1990), 245 Mont. 39, 798 P.2d 530, and *State v. Sullivan* (1982), 197 Mont. 395, 642 P.2d 1008, we held that in order to be "reasonably related to the objectives of rehabilitation and the protection of the victim and society," there must be some connection or relationship between the underlying offense and the sentencing limitation imposed. *Ommundson*, ¶ 11. Moreover, we held that the terms "rehabilitation" and "protection of the victim and society" referenced within the sentencing statutes must be read in the context of the offense charged. *Ommundson*, ¶ 11.

¶30 In this case, we agree with the State that the restrictions related to gambling are reasonable, given the nature of the offense of issuing bad checks, and Kroll's evident lure to easy money-making schemes. As reflected in the PSI, Kroll had been charged with issuing or negotiating a bad check on multiple occasions, and admitted to the arresting officer that he committed the crime in the instant case because he "was out of work, and the scheme was an easy way to get money."

¶31 Furthermore, at the time of sentencing Kroll owed in excess of $13,000 in restitution and held no job. As the State notes, the lure of easy money has long been a hallmark of gambling. Given Kroll's demonstrated willingness to enter into easy money-making schemes, we conclude that the conditions restricting Kroll's right to gamble bear a sufficient connection to the underlying offense, and are reasonably related to his rehabilitation, as well as to the protection of society.

¶32     We also conclude that the District Court did not err in requiring Kroll to undergo a sexual risk assessment as a condition of sentence.  The record shows that Kroll purchased a significant amount of pornographic materials using bad checks.  Thus, the nature of the materials purchased with the illegal funds established a sufficient connection between the crime and the condition requiring Kroll to undergo a sexual risk assessment.  Because our sentencing statutes seek to rehabilitate the offender and protect society from further similar conduct, we hold that it was proper for the District Court to impose such a condition as part of Kroll's suspended sentence.

¶33     We affirm the "civil restriction" condition numbers 3, 6, 8, 13, 14, and 20, as well as the conditions related to gambling and requiring Kroll to undergo a sexual risk assessment. However, we reverse condition numbers 1 and 10 of the written judgment, and order these conditions to be stricken from the written judgment on remand.


                                                    /S/ JIM RICE



We concur:

/S/ JOHN WARNER
/S/ PATRICIA O. COTTER
/S/ JIM REGNIER
/S/ JAMES C. NELSON


                                        14