**Keith Elton RICH, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 79A05–0712–CR–687.

Court of Appeals of Indiana.

July 16, 2008.

Transfer Denied Sept. 12, 2008.

Steven Knecht, Vonderheide & Knecht, P.C., Lafayette, IN, Attorney for Appellant.

Steve Carter, Attorney General Of Indiana, Joseph Robert Delamater, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

### Case Summary and Issues

Following a guilty plea, Keith Rich appeals his fourteen-year sentence for burglary and possession of marijuana, the trial court's order that Rich pay a $200 public defender fee, and the trial court's order that Rich reimburse the victims for the cost of a home security system. Rich raises the issues of whether the trial court abused its discretion in ordering him to pay the public defender fee and reimburse the victims and whether his sentence is inappropriate given the nature of the offenses and his character. Concluding the trial court acted within its discretion in ordering Rich to pay the public defender fee and that his sentence is not inappropriate, we affirm the trial court in part. However, concluding the trial court abused

its discretion in ordering Rich to pay for the installation of the victims' security system, we reverse the trial court's restitution order and remand with instructions that it correct this order to remove the cost of the security system.

### Facts and Procedural History

On July 29, 2006, Rich broke into the victims' residence and took various items, including a videogame system, movies, a laptop computer, and an acoustic guitar. Rich also damaged two doors and a lock. Rich sold the laptop and guitar to a pawnshop and was apprehended shortly thereafter. When police arrested Rich, he was found in possession of marijuana.

On August 1, 2006, the State charged Rich with burglary, a Class B felony; theft, a Class D felony; receiving stolen property, a Class D felony; and possession of marijuana, a Class A misdemeanor. On September 18, 2007, Rich pled guilty to burglary and possession of marijuana pursuant to a plea agreement. Under this agreement, the State dropped the other two felony charges as well as six misdemeanor charges in other pending cases, and agreed to not file a petition to revoke Rich's probation. The agreement provided that sentencing would be left to the trial court's discretion and that Rich would make restitution to the victims. On October 18, 2007, the trial court held a sentencing hearing. The trial court found Rich's criminal history and that he committed the instant offenses while on probation as aggravating factors. As mitigating factors, the trial court found Rich's youthful age, that he pled guilty and took responsibility for his actions, that he would make restitution, and that he was remorseful. The trial court found the aggravating factors

outweighed the mitigating factors and sentenced Rich to fourteen years for burglary and one year for possession of marijuana, with the sentences to run concurrently. The trial court ordered that Rich serve nine years at the Indiana Department of Correction and one year through Tippecanoe County Community Corrections, and suspended the remaining four years to probation. The trial court also ordered Rich to reimburse the Tippecanoe County Public Defender $200 and pay restitution in the amount of $2,154.20 to the victims and $1,800 to Farm Bureau Insurance, payable at a rate of $150 per month after his release from incarceration. Rich now appeals the trial court's sentencing order.

### Discussion and Decision

#### I. Reimbursement to Public Defender

As a condition of Rich's probation, the trial court ordered that Rich reimburse the Tippecanoe County Public Defender $200. Rich argues that the trial court abused its discretion by not first holding a hearing to determine Rich's ability to pay this fee. Indiana Code section 33–37–2–3 [1] provides:

> (a) *Except as provided in subsection (b),* when the court imposes costs, it shall conduct a hearing to determine whether the convicted person is indigent. . . .

> (b) A court may impose costs and suspend payment of all or part of the costs until the convicted person has completed all or part of the sentence. If the court suspends payment of the costs, the court shall conduct a hearing at *the time the costs are due* to determine whether the convicted person is indigent. . . .

> * * *

---

1. We note that in its appellate brief, the State cites statutes that have been repealed. *See* Appellee's Br. at 4 (citing Indiana Code sections 33–9–11.5–6 (repealed by P.L. 98–2004, SEC. 164)), 33–19–2–3 (repealed by same public law)). We urge the State to cite current statutes.

(e) If, after a hearing under subsection (a) or (b), the court determines that a convicted person is able to pay part of the costs of representation, the court shall order the person to pay an amount of not more than the cost of the defense services rendered on behalf of the person. . . .

(Emphasis added).

Here, the trial court's order requires that Rich reimburse the Public Defender as a condition of probation, which will not begin until after he has completed the executed portion of his sentence. Therefore, under section 33–37–2–3(b), the trial court was not required to hold a hearing until Rich has completed the executed portion of his sentence. As Rich is not required to pay the public defender's fee at this time, holding a hearing to determine his current ability to pay was not required. *Cf. Whedon v. State,* 765 N.E.2d 1276, 1279 (Ind.2002) (recognizing that "a defendant's financial resources are more appropriately determined not at the time of initial sentencing but at the conclusion of incarceration, thus allowing consideration of whether the defendant may have accumulated assets through inheritance or otherwise"). We conclude the trial court did not abuse its discretion in ordering Rich to reimburse the Public Defender.

## II. Restitution

As a condition of probation, the trial court ordered that Rich pay restitution to the victims and their insurance company. Included in the amount the trial court ordered Rich to pay to the victims was the cost of the installation and monthly fees for a security system the victims installed "to help give [them] peace-of-mind while alone at night or out of the house." Appellant's Green Appendix at 10 (letter from victims to pre-sentence investigator). Rich argues that requiring him to pay for the victims' security system was improper.

## A. Waiver

■ Initially, the State argues that Rich has waived this issue by failing to object to the victims' restitution report at the sentencing hearing. After reviewing the transcript, we agree that Rich did not specifically object to the inclusion of the payment for the alarm system in the restitution order. However, the parties did discuss the issue at the sentencing hearing, and the trial court specifically questioned its authority to order Rich to reimburse the victims for the cost of this security system. *See* Transcript at 38 ("I'm not sure that I can order restitution for buying an alarm system."). We need not determine whether the discussion of restitution at the sentencing hearing was sufficient to preserve the issue, as we conclude that we would address Rich's argument even without a specific objection.

We recognize that a panel of this court has held that a defendant's "failure to make a specific and timely objection to the trial court's receipt of evidence concerning the amount of restitution constitutes a failure to preserve the matter and waives it as an issue for appeal." *Long v. State,* 867 N.E.2d 606, 618 (Ind.Ct.App.2007); *see also Huddleston v. State,* 764 N.E.2d 655, 657 (Ind.Ct.App.2002) (opinion on reh'g) (addressing the merits, but stating that the defendant "did not object to the restitution order and may be deemed to have waived that issue on appeal"). However, the vast weight of the recent caselaw in this state indicates that appellate courts will review a trial court's restitution order even where the defendant did not object based on the rationale that "a restitution order is part of the sentence, and 'it is the duty of the appellate courts to bring illegal sentences into compliance.'" *Cherry v. State,* 772 N.E.2d 433, 440 (Ind.Ct.App.2002) (quoting *Golden v. State,* 553 N.E.2d 1219, 1223–24 (Ind.Ct.App.1990), *trans. denied* ), *trans.*

*denied; see also Lohmiller v. State,* 884 N.E.2d 903, 916 (Ind.Ct.App.2008); *Kline v. State,* 875 N.E.2d 435, 438 (Ind.Ct.App. 2007); *Laker v. State,* 869 N.E.2d 1216, 1220 (Ind.Ct.App.2007); *Bennett v. State,* 862 N.E.2d 1281, 1287 (Ind.Ct.App.2007); *Johnson v. State,* 845 N.E.2d 147, 153 (Ind. Ct.App.2006), *trans. denied; Ware v. State,* 816 N.E.2d 1167, 1179 (Ind.Ct.App. 2004); *Green v. State,* 811 N.E.2d 874, 877 (Ind.Ct.App.2004). We agree with the weight of the authority and will address Rich's argument on the merits.[2]

### B. Standard of Review

 A restitution order must be supported by sufficient evidence of actual loss sustained by the victim or victims of a crime. *See Lohmiller,* 884 N.E.2d at 916. "The amount of actual loss is a factual matter that can be determined only upon the presentation of evidence." *Bennett,* 862 N.E.2d at 1287. We review a trial court's order of restitution for an abuse of discretion. *See Bailey v. State,* 717 N.E.2d 1, 4 (Ind.1999). We will affirm the trial court's order if sufficient evidence exists to support its decision. *Creager v. State,* 737 N.E.2d 771, 779 (Ind.Ct.App. 2000), *trans. denied.*

 However, the trial court is also bound to comply with the applicable restitution statutes when ordering restitution. *See id.* at 780; *cf. Pearson v. State,* 883 N.E.2d 770, 772 (Ind.2008) (recognizing that under Indiana Code section 35–38–2–2.3(a)(5), "when the trial court enters an order of restitution as part of a condition of probation, the court is required to inquire into the defendant's ability to pay");

*Lohmiller,* 884 N.E.2d at 917 (concluding the trial court committed fundamental error by awarding restitution to a County where the State failed to argue that the County was a "victim" under Indiana Code section 35–50–5–3); *Ware,* 816 N.E.2d at 1180 (reversing the trial court's order where "the restitution order violate[d] the restitution statute"). The issue of whether an award of restitution for the installation of a security system is proper involves a question of statutory interpretation. *Cf. Creager,* 737 N.E.2d at 780 (recognizing that the question of whether "the loss of future child support falls within the ambit of Indiana Code section 35–50–5–3" involves a question of statutory interpretation). The interpretation of a statute is a question of law that we review de novo. *B.K.C. v. State,* 781 N.E.2d 1157, 1167 (Ind.Ct.App.2003). When interpreting a criminal statute, "[w]ords and phrases shall be taken in their plain, or ordinary and usual, sense." Ind.Code § 1–1–4–1(1); *see C.D.H. v. State,* 860 N.E.2d 608, 611 (Ind.Ct.App.2007), *trans. denied.* We shall construe such statutes strictly against the State, but recognize that "statutes should not be narrowed so much as to exclude cases they would fairly cover." *Merritt v. State,* 829 N.E.2d 472, 475 (Ind.2005).

### C. Payment for Security System

 The State argues that the cost of a security system is a proper subject of restitution as, "[w]hile the security system is not objectively necessary, it was necessary for the victims to return to the levels of security they felt prior to the burglary."

---

**2.** We recognize that in *Mitchell v. State,* 730 N.E.2d 197, 201 (Ind.Ct.App.2000), *trans. denied,* a panel of this court declined to review the propriety of a trial court's ordering a defendant to make restitution for a victim's counseling on the basis that the defendant had stated at the sentencing hearing that he would "make restitution and . . . pay the cost

of any counseling that [the victim] has to have, if she's in counseling." In this case, Rich did not offer to reimburse the victims for the cost of the security system, and we distinguish *Mitchell* on this basis. We therefore make no comment on whether the invited error doctrine can bar a defendant from challenging a restitution order.

Appellee's Br. at 6. Although we understand that the victims may have suffered emotional distress as a result of Rich's crime, and that they may have installed the security system as an attempt to alleviate this angst, we disagree that our restitution statute authorizes a trial court to order a defendant to pay for such an expense.

 As part of a sentence or as a condition of probation, a trial court may order a defendant to pay restitution to a victim. *Bailey*, 717 N.E.2d at 4. "The purpose behind an order of restitution is to impress upon the criminal defendant the magnitude of the loss he has caused and to defray costs to the victim caused by the offense." *Carswell v. State*, 721 N.E.2d 1255, 1259 (Ind.Ct.App.1999). For crimes involving harm to property, a trial court "shall base its restitution order upon a consideration of . . . property damages of the victim incurred as a result of the crime, based on the actual cost of repair (or replacement if repair is inappropriate)." Ind.Code § 35–50–5–3(a).[3]

Although this case is the first opportunity Indiana appellate courts have had to address the propriety of a restitution award for a burglary victim's installation of a security system, several of our sister states with restitution statutes similar to our own have addressed this question and concluded that the inclusion of this cost is improper. *See People v. Reyes*, 166 P.3d 301, 303 (Colo.Ct.App.2007) (concluding the installation of a security system did not fit within the statute allowing restitution for costs "proximately caused by an offender's conduct"); *J.M. v. State*, 658 So.2d 1128, 1128–29 (Fla.Ct.App.1995) (concluding that the cost of a security system was not encompassed in the statute

permitting an award of restitution for "any damage or loss caused by the child's offense," as "the relationship between the system and [the child's] delinquent acts was not the significant causal relationship contemplated by the statute"); *In re T.W.*, 268 Ill.App.3d 744, 205 Ill.Dec. 882, 644 N.E.2d 438, 439 (1994) (concluding that payment for installation of security lights did not fall within the statutory provision allowing restitution " 'for out-of-pocket expenses, damages, losses, or injuries' sustained by victims of a crime"); *State v. Chambers*, 36 Kan.App.2d 228, 138 P.3d 405, 415 (2006) (concluding the under a statute authorizing restitution for "damage or loss caused by the defendant's crime," the "purchase [of a security system] was an example of 'tangential costs incurred as a result of a crime,' not a cost *caused* by the crime" (citations omitted)), *review denied*; *Howell v. Commonwealth*, 274 Va. 737, 652 S.E.2d 107, 109 (2007) (concluding that under a statute allowing payment for "damages or losses caused by the offense," "the installation of a security system, while related to [the] burglary, was not caused by the offense as required by [the statutes dealing with restitution]"); *see also State v. Waidelich*, 140 Idaho 622, 97 P.3d 489, 491 (App.2004) (implicitly recognizing that under the statute allowing restitution for "the value of property taken . . . or otherwise harmed, . . . and direct out-of-pocket losses or expenses, . . . [but not] less tangible damage such as pain and suffering, wrongful death or emotional distress," a restitution order cannot include the cost of a new security system). However, two other courts have reached different results.

The Supreme Court of Wisconsin has held that although a trial court may not

---

**3.** This statute identifies several other considerations, not applicable to this case, regarding

harm to victims' persons.

order a defendant to reimburse a victim for the cost of a security system as part of restitution, under certain circumstances, the trial court may do so as a reasonable condition of probation. *State v. Heyn,* 155 Wis.2d 621, 456 N.W.2d 157, 160–61 (1990). We decline to adopt the Wisconsin courts' logic, however, as our statutory scheme clearly indicates that the same considerations apply whether restitution is ordered as part of a sentence or as a condition of probation. *See* Ind.Code § 35–50–5–3(a) (stating that the court may order restitution "as a condition of probation or without placing the person on probation").

The Supreme Court of Montana upheld a restitution order for the cost of added security in *State v. Thompson,* 321 Mont. 332, 91 P.3d 12 (2004), *overruled on other grounds, State v. Herman,* 343 Mont. 494, 188 P.3d 978 (Mont.2008). In Thompson, a maintenance man had used keys given to him by his employer to gain access to tenants' areas and steal various items. The landlord replaced all the locks for the building's common doors based on tenants' reports of a decreased sense of security, a tenant's leaving the building as a result of this lack of security, and the fact that she was not sure whether the defendant had made duplicate keys to the building. *Id.* at 13. The court concluded that replacing the locks resulted directly from the defendant's crimes, and therefore was a proper subject of restitution. *Id.* at 15. *Thompson* is also readily distinguishable, as it involves a commercial context where a landlord replaced locks to alleviate concerns of her tenants, one of whom had vacated the premises based on these concerns. Further, the defendant in *Thompson* had possessed keys to the tenants'

doors, and easily could have retained or distributed copies of these keys. Therefore, changing the locks guarded against further economic harm caused by the defendants' actions. Here, the victims installed a security system to alleviate their own distress, not the distress of tenants. Further, Rich's acts do not make future break-ins more likely, and the victims do not face the threat of future economic harm as did the landlord in *Thompson.* Importantly, Thompson involved the replacement of already-existing equipment, while the victims here had not previously had a security system in place, and were therefore making an addition to their house.

In addition to finding support in the decisions of our sister states, a conclusion that our restitution statute does not authorize restitution for the victims' installation of a security system is found in our own decisions and the statute's plain language.

 We have recognized that restitution must reflect the actual loss incurred by the victim. *Shane v. State,* 769 N.E.2d 1195, 1199 (Ind.Ct.App.2002). The harm or loss must come as "a direct and immediate result of the criminal acts of a defendant." *Huddleston,* 764 N.E.2d at 657. Also, "the trial court may consider only those expenses incurred by the victim prior to the date of sentencing in formulating its restitution order."[4] *Carswell,* 721 N.E.2d at 1259 (reversing trial court's order of restitution for counseling expense that the victims may incur in the future).

The State argues that the victims' desire to install the security system stemmed from Rich's burglary. The fact that the victims expended money on a security sys-

---

4. An exception to this rule exists involving the costs, authorized under Indiana Code section 35–50–5–3(1), for funeral expenses, which may be awarded even though the expenses have not been incurred before sentencing. *See Markland v. State,* 865 N.E.2d 639, 644 (Ind.Ct.App.2007), *trans. denied.*

tem in response to Rich's acts does not make such an expenditure compensable through restitution. *Cf. Springer v. State,* 798 N.E.2d 431, 436 (Ind.2003) (holding the trial court improperly ordered the defendant to pay restitution for the cost of the victim's plane ticket purchased to return home after the victim's home was damaged as "none of the statutory restitution categories includes any language that could be construed to authorize it"); *Henderson v. State,* 848 N.E.2d 341, 346 (Ind.Ct.App.2006) (holding insurance company was not entitled to restitution for money spent on investigative expenses, which "do not fall into a statutorily compensable category of restitution"). Indeed, while the victims in this case installed a security system, another burglary victim could purchase dogs; another, firearms; and another home-owner could be unnerved to the point that he or she moves to a different neighborhood. *Cf. Thompson,* 91 P.3d at 15 (Leaphart, J., dissenting) ("If allaying subjective feelings of insecurity suffices as a basis for restitution, no doubt the next theft victim will request a salary for a full-time security guard or a state-of-the-art alarm system.").

■■■■ The plain language of our restitution statute indicates that victims of crimes to property may receive restitution for "property damages," and that the amount shall be based on the cost of "repair." "Property damage" involves some sort of "loss or injury to ... property," Black's Law Dictionary 393 (7th ed.1999) (defining "damage"), or "[h]arm or injury ... resulting in loss of value or the impairment of usefulness," The American Heritage Dictionary of the English Language 458 (4th ed.2000) (same). The cost of "repair" should include the amount expended "[t]o restore to sound condition after damage or injury." *Id.* at 1478. Had the

victims already owned a security system when Rich broke into their home, they unquestionably would be entitled to restitution had Rich harmed or damaged that system. *Cf. Judge v. State,* 659 N.E.2d 608, 613 (Ind.Ct.App.1995) (affirming trial court's order of restitution for an upgraded security system, where no evidence demonstrated that "such a system was an unnecessary *replacement*" (emphasis added)). Rich's break-in damaged many things; however, a security system was not one of them. Moreover, as the victims owned no security system, their installation of a security system is not a "repair" to their home, but an upgrade or improvement. Indeed, the victims' home is now protected from future, unrelated break-ins, and their home is in a better condition than before Rich's break-in. The Colorado Court of Appeals recognized this benefit and explained,

> Here, defendant's conduct did not create or increase the victim's risk of future burglaries, it merely exposed an existing vulnerability. Awarding restitution not because of any damage or injury defendant did or would inflict, but solely to correct the preexisting vulnerability puts the victim in a better financial position than it would have been in had defendant's conduct not occurred. It gives the victim an additional asset it did not have prior to defendant's conduct, despite the lack of evidence that such an asset is needed to protect the victim from defendant in the future.

*Reyes,* 166 P.3d at 304. The Wyoming Supreme Court also recognized the continuing benefit to the purchaser of a security system in *Alcaraz v. State,* 44 P.3d 68 (Wyo.2002). In *Alcaraz,* an employer suspected an employee was stealing money from the business and purchased a security system to investigate the employee. The trial court awarded the employer the total cost of the surveillance system. The

Wyoming Supreme Court reversed, holding that the employee should bear "a reasonable proportion of the cost of the purchase and operation of the surveillance equipment used to apprehend him." *Id.* at 73. However, the court concluded that the award "must be reduced in consideration of the value the system will provide to the store owner over its useful life." *Id.*

In no way do we fault or criticize the victims for feeling insecure in their home or seeking to install a security system. However, whether the trial court should have the discretion to include the cost of a new security system in a restitution order is a question more properly addressed to the legislative branch than to the judicial branch. *See Creager*, 737 N.E.2d at 781 n. 4 (inviting the General Assembly to consider amending Indiana Code section 35–50–5–3 to include future lost child support as an item for restitution); *cf.* Cal. Penal Code § 1202.4(f)(3)(J) (authorizing restitution for "[e]xpenses to install or increase residential security incurred related to a crime ... including, but not limited to, a home security device or system, or replacing or increasing the number of locks"). Under our restitution statute, the trial court was statutorily authorized to order restitution "for property damage incurred as the result of [Rich's] burglary." *James v. State*, 868 N.E.2d 543, 549 (Ind.Ct.App. 2007). The installation of the new security system does not constitute such damage, and no other portion of the statute [5] can be construed to authorize such an order.

Therefore, we conclude the trial court abused its discretion in ordering Rich to reimburse the victims for the cost of the security system and remand with instructions that the trial court reduce its restitution order accordingly.

## IV. Sentencing

### A. Standard of Review

■■■■■ "Although a trial court may have acted within its lawful discretion in determining a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution 'authorize independent appellate review and revision of a sentence imposed by the trial court.'" *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind.2007) (quoting *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)), *clarified on reh'g*, 875 N.E.2d 218. When reviewing a sentence imposed by the trial court, we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). We have authority to "revise sentences when certain broad conditions are satisfied." *Neale v. State*, 826 N.E.2d 635, 639 (Ind.2005). When determining whether a sentence is inappropriate, we recognize that the advisory sentence "is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Weiss v. State*, 848 N.E.2d 1070, 1072 (Ind.2006). We must examine both the nature of the offense and

---

**5.** The State attempts to analogize this situation to *Kline v. State*, 875 N.E.2d 435 (Ind.Ct. App.2007). In *Kline*, the defendant was convicted of multiple counts of sexual misconduct, stemming from his repeated acts of inviting young boys to his house, drugging them, and fondling them while they slept. *Id.* at 436. This court recognized that a restitution order could include the cost of counseling incurred before the defendant's date of sentencing. *Id.* at 438. Although we in no way trivialize the anxiety felt by the victims in this case, we do not find the State's analogy persuasive. Moreover, the authority to order restitution for counseling comes from Indiana Code section 35–50–5–3(a)(2), which authorizes restitution for "medical and hospital costs incurred by the victim (before the date of sentencing) as a result of the crime." Clearly, the installation of a security system does not fall under this section.

the defendant's character. *See Payton v. State*, 818 N.E.2d 493, 498 (Ind.Ct.App. 2004), *trans. denied.* When conducting this inquiry, we may look to any factors appearing in the record. *Roney v. State*, 872 N.E.2d 192, 206 (Ind.Ct.App.2007), *trans. denied.* The burden is on the defendant to demonstrate that his sentence is inappropriate. *Childress*, 848 N.E.2d at 1080.

### B. Appropriateness of Rich's Sentence [6]

■ The trial court sentenced Rich to fourteen years, a sentence four years above the advisory sentence and six years below the maximum sentence for burglary, *see* Ind.Code § 35-50-2-5. In regard to the nature of the offense, we find nothing in the record that distinguishes Rich's offense from a typical burglary as a Class B felony, and the State makes no argument that his offense is particularly egregious. However, we also find nothing in the record to indicate that Rich's offense is any less egregious than a typical burglary.

In regard to Rich's character, we first note his criminal history consisting of a felony conviction of intimidation while armed with a deadly weapon and a misdemeanor conviction of operating a motor vehicle while never having received a license. Although this history is not the most extensive we have seen, such a criminal history still comments negatively on Rich's character.

We also note that Rich committed the instant offenses while on probation. *See Ryle v. State*, 842 N.E.2d 320, 325 n. 5 (Ind.2005) ("While a criminal history aggravates a subsequent crime because of recidivism, probation further aggravates a subsequent crime because the defendant was still serving a court-imposed sentence."), *cert. denied,* —— U.S. ——, 127 S.Ct. 90, 166 L.Ed.2d 63 (2006). The fact that Rich committed these offenses while on probation is a substantial consideration in our assessment of his character. *Cf. Barber v. State*, 863 N.E.2d 1199, 1208 (Ind.Ct.App.2007) (holding that even if the other aggravating circumstance was insignificant, the trial court would have acted within its discretion in ordering maximum sentences based on the fact that the defendant committed the crime while on probation), *trans. denied.*

We also note that after being charged with the instant offenses, Rich has been arrested three times and charged with six misdemeanors: two charges of public intoxication, two charges of trespass, one charge of minor consumption, and one charge of possession of marijuana. Clearly, Rich has not been deterred from committing criminal conduct. *See Miller v. State*, 709 N.E.2d 48, 49 (Ind.Ct.App.1999) ("Although an arrest record is not evidence of prior criminal history, '[t]his information is relevant to the court's assessment of the defendant's character and the risk that he will commit another crime and is therefore properly considered by a court in determining sentence.'" (quoting *Tunstill v. State*, 568 N.E.2d 539, 545 (Ind. 1991))). We also note that Rich admitted to using marijuana and drinking while underage during the years preceding the instant offenses, further indicating that Rich has not been leading a law-abiding life. *Cf. Drakulich v. State*, 877 N.E.2d 525, 536 (Ind.Ct.App.2007) (analyzing the defendant's character under Rule 7(B) and noting that the defendant "was not living a law-abiding life for a period of time"), *trans. denied; Roney*, 872 N.E.2d at 207 (assessing defendant's character and not-

---

**6.** Rich challenges both his fourteen-year sentence for burglary and his one-year sentence for possession of marijuana. However, as the trial court ordered these sentences to run concurrently, we will address his argument in regard to only his sentence for burglary.

ing that he had used illegal drugs throughout his life).

We recognize that Rich pled guilty and that the trial court found him remorseful. However, in exchange for his guilty plea, the State dismissed two felony charges relating to the instant offenses and six misdemeanor charges stemming from separate cause numbers. Under these circumstances, Rich's guilty plea has little impact on our analysis of his character. *See Fields v. State*, 852 N.E.2d 1030, 1034 (Ind.Ct.App.2006) (noting that the defendant "received a significant benefit from the plea, and therefore it does not reflect as favorably upon his character as it might otherwise"), *trans. denied.*

We also recognize, as did the trial court, that Rich was only twenty-one years old at the time of sentencing. Still, Rich is "beyond the age at which the law commands special treatment." *Monegan v. State*, 756 N.E.2d 499, 504 (Ind.2001). We also note that despite his relative youth, Rich has managed to accumulate two felony convictions, one misdemeanor conviction, and six total arrests involving fourteen charges. *Cf. Ellis v. State*, 736 N.E.2d 731, 736 (Ind.2000) ("Focusing on chronological age is a common shorthand for measuring culpability, bur for people in their teens and early twenties it is frequently not the end of the inquiry."). Based on Rich's criminal history and arrest record, his age has relatively minor impact on our analysis of his character.

We also give little weight to the fact that Rich will pay restitution to the victims, as he agreed to do so as part of a plea agreement under which he received a significant benefit. Nothing in the record indicates that Rich has of yet made any attempt to reimburse the victims or return the stolen property.

In sum, we conclude Rich has failed to carry his burden of convincing this court that his sentence is inappropriate.

### Conclusion

We conclude the trial court acted within its discretion in ordering Rich to reimburse the Tippecanoe County Public Defender, but abused its discretion in ordering Rich to reimburse the victims for the cost of installing a new security system. We therefore reverse the trial court's restitution order and remand with instructions that the trial court correct this order consistent with this opinion. We also conclude that Rich's sentence is not inappropriate and affirm the trial court on this point.

Affirmed in part, reversed in part, and remanded.

BAKER, C.J., and RILEY, J., concur.