**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DAVID T.A. MATTINGLY**
Mattingly Legal, LLC
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**STEPHEN R. CREASON**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICHAEL J. GOSNELL, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 79A02-1110-CR-951 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE TIPPECANOE CIRCUIT COURT
The Honorable Donald L. Daniel, Judge
Cause No. 79C01-1103-FB-6

**July 13, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**DARDEN, Judge**

STATEMENT OF THE CASE

Michael J. Gosnell appeals his sentence imposed following his guilty plea to class B felony conspiracy to commit robbery while armed with a deadly weapon.[1]

We affirm.

ISSUE

Whether Gosnell's sentence is inappropriate pursuant to Indiana Appellate Rule 7(B).

FACTS

On July 17, 2010, Gosnell, who was on probation for conspiracy to commit robbery and theft, made an agreement with Brandon Harris-Crider and Antonio Muro-Esparza to rob a Village Pantry. Gosnell's role in the robbery was to be the lookout. Gosnell agreed to call Harris-Crider and Muro-Esparza if he saw anyone pulling up. Before Muro-Esparza and Harris-Crider entered the store, Gosnell called Muro-Esparza to inform him that the "coast was clear." (App. 20). Harris-Crider and Muro-Esparza then went inside Village Pantry, with their faces concealed, and used a knife to threaten and force Jeffrey Billota, an employee, to open the cash register and the safe. Harris-Crider and Muro-Esparza took money, cigarettes, cigars, and lottery tickets, which totaled to $784.24. The three men then brought the stolen property back to Gosnell's residence where they divvied up the proceeds.

Following the robbery, Gosnell went to multiple gas stations and cashed the stolen lottery tickets. The police learned through lottery records that Gosnell had cashed

---

[1] Ind. Code §§ 35-41-5-2; 35-42-5-1.

2

the stolen tickets at gas stations, and on January 6, 2011, a detective interviewed Gosnell concerning the robbery of the Village Pantry on July 17, 2010. Gosnell initially denied being involved but later admitted that he acted as the lookout for the robbery. Thereafter, the State charged Gosnell with count I, class B felony conspiracy to commit robbery while armed with a deadly weapon; count II, class B felony robbery while armed with a deadly weapon; and count III, class D felony theft.

On August 15, 2011, Gosnell pled guilty, without a plea agreement, to all three counts as charged. The trial court held a sentence hearing on September 9, 2011, and found the following mitigating circumstances: that Gosnell has taken responsibility for his actions and expressed remorse, that he has a minor child, and that he has a history of mental health issues, including attention deficit disorder and bipolar disorder. The trial court found Gosnell's extensive criminal history, illegal alcohol and drug use, failed attempts at rehabilitation, and high score on the Indiana Risk Assessment to be aggravating circumstances. Furthermore, the trial court considered the fact that Gosnell was on probation at the time he committed the crimes in this case. The trial court merged counts II and III with count I, conspiracy to commit robbery while armed with a deadly weapon, and sentenced Gosnell to sixteen years, with two years suspended to supervised probation.

DECISION

Gosnell argues that the trial court abused its discretion in determining his sentence. Specifically, he contends that the sentence was inappropriate in light of the nature of the offense and his character.

We have the authority to revise a sentence if it is "inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). The defendant bears the burden of showing that his sentence is inappropriate. *Rich v. State*, 890 N.E.2d 44, 53 (Ind. Ct. App. 2008). "Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Coleman v. State*, 952 N.E.2d 377, 384 (Ind. Ct. App. 2011). A court may impose any sentence that is authorized by statute and allowed under the Indiana Constitution. I.C. § 35-38-1-7.1(d).

In determining whether a sentence is inappropriate, we acknowledge that the Legislature has designed the advisory sentence to be the starting point as an appropriate sentence based on the crime committed. *Rich*, 890 N.E.2d at 53. The sentencing range for a class B felony is between six and twenty years, with the advisory sentence being ten years. I.C. § 35-50-2-5. The trial court sentenced Gosnell to sixteen years with two years suspended to probation.

In regards to Gosnell's present offenses, the record reveals that Gosnell and his two fellow conspirators planned to rob a Village Pantry. Gosnell acted as the lookout, stood outside of Village Pantry, and gave his accomplices the all clear to go inside of the

store.  The two accomplices then concealed their faces, went inside of the store, threatened an employee with a knife, and demanded cash from the register and safe. After taking the cash, the two men also took lottery tickets, cigarettes, and cigars from the store.

Gosnell concedes that he committed serious crimes, but argues that he has a lower level of culpability because he acted as a lookout.  However, Gosnell played an important role in the robbing of Village Pantry.  Before Harris-Crider and Mauro-Esparza entered the store, Gosnell told them that the coast was clear.  Gosnell stood outside of the store, while his two fellow cohorts were inside, to see if anyone was pulling up to the store so that he could alert his accomplices.  If it were not for Gosnell serving as the lookout, Harris-Crider and Mauro-Esparza may not have robbed the store.

Gosnell contends that he never entered Village Pantry, handled a weapon, or made any threats of violence.  Nonetheless, Gosnell was not simply just the lookout.  He made a plan and an agreement with Harris-Crider and Mauro-Esparza to rob the Village Pantry. After the robbery, the three men went back to Gosnell's house, where Gosnell received his share of the proceeds.  Later, Gosnell waited and cashed in some of the stolen lottery tickets at different gas stations around town.  Furthermore, Gosnell testified that although he never possessed the weapon used in the robbery, he knew that the weapon was a knife and that it belonged to Harris-Crider.

As to Gosnell's character, he has had quite an extensive criminal history at his young age of twenty-two.  Gosnell's first run-in with the law occurred at the age of

5

sixteen when he was adjudicated a delinquent for battery. At the time he committed the offenses in this case, he was on probation for similar felony offenses. Moreover, this is not the first time that Gosnell has been convicted of a felony. He was convicted in 2008 of class C felony conspiracy to commit robbery and class D felony theft. In the 2008 case, there were two petitions to revoke his probation. One petition was found true, and the trial court ordered Gosnell to ten days in jail with time served and ordered him to complete fifty hours of community service and the Thinking for a Change Program. The other revocation petition was pending at the time of sentencing. Additionally, at sentencing Gosnell had charges pending against him in two separate cases: in one, he had been charged with yet another class D felony theft and had an outstanding warrant, and in the other, he had been charged with three misdemeanors.

Due to Gosnell's many convictions and charges, it is clear that he has a disregard for the law. *See Cotto v. State*, 829 N.E.2d 520, 526 (Ind. 2005) (acknowledging that a lengthy arrest record "may reveal that a defendant has not been deterred even after having been subject to the police authority of the State"). The criminal justice system has been lenient on Gosnell and has given him many opportunities to reform and learn from his previous crimes, but Gosnell continues to be a repeat offender. He has been convicted and recently charged with crimes that are similar to his previous convictions. Gosnell argues that none of his prior adult cases involved crimes of violence. However, one of his present offenses is a violent crime. Furthermore, Gosnell has many felony convictions and has another felony case pending.

6

Along with his frequent contact with the criminal justice system, Gosnell's admitted illegal drug and alcohol use demonstrates that he is not living a law-abiding life. Gosnell's leisure activities indicated in the presentence investigation report ("PSI") include smoking marijuana and abusing prescription medicine. He has been consuming alcohol since the age of sixteen and using drugs since the age of thirteen. The PSI also reveals that Gosnell had been smoking marijuana and abusing Xanax everyday between the ages of thirteen and twenty-two. As well, he had been abusing Lortab and OxyContin everyday between ages seventeen and twenty-two. In addition, Gosnell reported using cocaine and significant amounts of LSD, mushrooms, and inhalants before the age of twenty.

We acknowledge that Gosnell took responsibility and pleaded guilty to all three counts without a plea agreement. Additionally, we recognize that Gosnell has attention deficit disorder and bipolar disorder. The trial court considered these circumstances as mitigating but determined that Gosnell's criminal history and illegal alcohol and drug abuse warranted an enhanced sentence.

Gosnell has not met his burden of persuading us that his sentence is inappropriate. In light of the nature of the offenses and Gosnell's character, we affirm the trial court's sentence of fourteen years executed at the Department of Correction followed by two years supervised probation.

Affirmed.

NAJAM, J., and RILEY, J., concur.