**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DAVID P. LYNCH**
Amy Noe Law
Richmond, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**LYUBOV GORE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| THOMAS HOLLIDAY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 89A04-1404-CR-177 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE WAYNE SUPERIOR COURT
The Honorable Gregory A. Horn, Judge
Cause No. 89D02-1208-MR-10

**November 12, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Thomas Holliday appeals his fifty-five-year sentence imposed following his guilty plea to murder. He argues that the trial court abused its discretion in finding that the nature of the crime was an aggravating circumstance and that his sentence is inappropriate based on the nature of the offense and his character. We conclude that the trial court did not abuse its discretion and that Holliday has failed to carry his burden to show that his sentence is inappropriate. Accordingly, we affirm.

**Facts and Procedural History**

The facts supporting Holliday's guilty plea are found in the probable cause affidavit, which the parties stipulated to. Holliday normally carried a .380 semiautomatic handgun. Holliday met sixty-nine-year-old Richard Smith in the summer of 2010 and worked for him doing odd jobs and driving him on errands. Smith had a coin collection that he gave to Holliday to sell for him because Holliday claimed that he could sell the coins for more money than their appraised value. On September 10 and 15, 2010, Holliday sold several coins from Smith's collection to a gallery.

On November 29, 2010, Smith wrote a letter to Holliday directing him to either return the coin collection or pay $26,000 by December 1, 2010. Smith's friend, Jane Bumbalough, accompanied Smith to Holliday's house to place the letter on Holliday's door. Holliday's daughter found the letter and read it. She knew that her father had been trying to sell Smith's coins. She left Smith's letter for her father.

2

Holliday read Smith's letter. Holliday told a friend that he was so mad at "the old man" that he wanted to kill him because he wanted his coins back. Appellant's App. at 14. On November 30, 2010, Holliday showed Smith's letter to his brother James. Holliday asked James to drive him to Smith's house so that he could "get rid of him" since he did not have the money or all the coins. *Id*. at 16. James refused to assist Holliday. Holliday also mentioned Smith's letter to his brother Robert. Holliday told Robert that he had to "get rid of him" because he did not have the money or the coins. *Id*.

On December 1, 2010, at around 1:15 p.m., Holliday and Robert drove to Smith's house. At 2:09 p.m., Smith called Jane and said that Holliday had come to the house and that he was scared. Jane told Holliday to keep his cell phone open in his pocket so that she could hear the conversation. Jane listened to the conversation for about thirty minutes when the phone call disconnected. Jane went to Smith's house, found him murdered in the cellar, and called the police. They searched Smith's body and found the cell phone open in his pocket, but there was no cell phone signal in the cellar. An autopsy revealed that Smith died from a gunshot wound to the head, that the bullet was of medium caliber such as a .380, .38, or .357, and that the range of fire was close to intermediate.

That night, James received phone calls from both Holliday and Robert. Both told James that Holliday had shot Smith. Holliday eventually admitted to the police that he went to Smith's house and they went to the basement where Holliday shot him in the head with a pistol.

In August 2012, the State charged Holliday with murder. In February 2014, Holliday filed a notice of intention to plead guilty as charged, and the State agreed to dismiss charges in cause number 89D02-1201-FD-19. Following a change of plea hearing, the trial court entered judgment of conviction for murder.

At the sentencing hearing, the trial court found the following mitigating factors: (1) Holliday lived a law-abiding life for a substantial period of time; and (2) he pled guilty five days prior to the trial date saving the time and expense of trial. The trial court found the following aggravating factors: (1) the victim was sixty-nine years old; (2) the nature of the crime, including that Holliday "took the victim to a small, dark cellar and shot the victim in the back of the head, execution style, in a cold calculated manner;" (3) Holliday had shown no remorse; and (4) he had engaged in violent misconduct while incarcerated. *Id*. at 97. The trial court found that the mitigating and aggravating facts balanced and sentenced Holliday to fifty-five years executed. Holliday appeals.

## Discussion and Decision

### Section 1 – Abuse of Discretion

Holliday asserts that the trial court abused its discretion in sentencing him by finding that the nature of the crime was an aggravating circumstance. We observe that as long as the trial court imposes a sentence within the statutory range, its sentencing decision is reviewable only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. "An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable,

probable, and actual deductions to be drawn therefrom." *Id*. at 491. A trial court abuses its sentencing discretion by (1) failing to enter a sentencing statement at all, (2) entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record, (3) entering a sentencing statement that omits reasons that are clearly supported by the record, or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. *Id*. at 490-91.

Specifically, Holliday contends that the trial court's finding that he "took the victim to a small, dark cellar and shot the victim in the back of the head, execution style, in a cold calculated manner" is unsupported by the record. Appellant's App. at 97. Holliday complains that there is no evidence that he took Smith to the cellar or that the cellar was small and dark, but it is undisputed that Holliday shot Smith in the cellar. Holliday also states that there is no evidence that Smith was shot in the *back* of the head, but the record shows that Smith was shot in the head at close to medium range. Finally, Smith asserts that there is no evidence that the shooting was "execution style" or in a cold and calculating manner. Not only did Holliday shoot Smith in the head at close to medium range, but the evidence also shows that Holliday's decision to kill Smith rested solely on Smith's wish to have his coin collection returned or be compensated for it. Holliday told people that he wanted to kill Smith, he found Smith, and he killed him. From these facts, the trial court could reasonably infer that Holliday shot Smith in a cold and calculating manner. The details that Holliday focuses on, such as whether the cellar was small and dark and where in the head Smith was shot, are insignificant and do not diminish the central determination that

5

Holliday shot Smith in a cold and calculating manner.  We conclude that the trial court's finding is not clearly against the logic and effects of the facts and circumstances before it.  Therefore, the trial court did not abuse its discretion in finding that the nature of the crime was an aggravating factor.

### Section 2 – Inappropriateness of Sentence

Holliday also contends that his sentence is inappropriate pursuant to Indiana Appellate Rule 7(B), which states, "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."  When reviewing a sentence, our principal role is to leaven the outliers rather than necessarily achieve what is perceived as the correct result.  *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008).  "We do not look to determine if the sentence was appropriate; instead we look to make sure the sentence was not inappropriate."  *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012).  Holliday has the burden to show that his sentence is inappropriate.  *Anglemyer*, 868 N.E.2d at 494.

The advisory sentence for murder is fifty-five years, with a range of forty-five years to sixty-five years.  Ind. Code § 35-50-2-3.  Holliday received the advisory sentence.  Holliday argues that the minimum sentence is warranted.

Turning first to the nature of the offense, we observe that "the advisory sentence is the starting point the Legislature selected as appropriate for the crime committed."  *Pierce v. State*, 949 N.E.2d 349, 352 (Ind. 2011).  "The nature of the offenses is found in the details and circumstances of the commission of the offenses and the defendant's participation."

6

*Croy v. State*, 953 N.E.2d 660, 664 (Ind. Ct. App. 2011). "One factor we consider when determining the appropriateness of a deviation from the advisory sentence is whether there is anything more or less egregious about the offense committed by the defendant that makes it different from the 'typical' offense accounted for by the legislature when it set the advisory sentence." *Johnson v. State*, 986 N.E.2d 852, 856 (Ind. Ct. App. 2013) (quoting *Rich v. State*, 890 N.E.2d 44, 54 (Ind. Ct. App. 2008), *trans. denied*). Here, Holliday took advantage of an elderly man. He killed Smith simply because Smith wanted his coin collection back. Instead of returning the remaining coins and giving Smith the proceeds from the sale of his coins, Holliday decided to kill Smith and keep his coins and money. Holliday went to Smith's house and, having previously expressed a desire to kill him, shot him in the head. The nature of the crime does not recommend a sentence below the advisory.

As for Holliday's character, he has led a law-abiding life, with only one misdemeanor conviction for disorderly conduct in 1998. He also asserts that he is deeply committed to his family and has played a positive role in his community by serving as vice president of the local branch of the Marine Corps League, raising money to benefit children, and facilitating development of a new park. Holliday's argument ignores the fact that he has shown no remorse for his actions and that he has engaged in violent conduct while incarcerated. Holliday threated to kill other inmates. He made a shank out of a sharpened toothbrush and threatened to use a pencil as a weapon while in a conflict with another inmate. Appellant's App. at 81. Holliday's character does not warrant a reduced sentence.

We conclude that Holliday has failed to carry his burden to show that his sentence is inappropriate based on the nature of his crime and his character. Accordingly, we affirm.

Affirmed.

RILEY, J., and MATHIAS, J., concur.