**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Jan 15 2015, 10:18 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ELIZABETH A. BELLIN**
Elkhart, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**WILLIAM H. BRAINARD**
Deputy Attorney General

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LEESHAWN RODGERS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 20A03-1405-CR-175 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ELKHART CIRCUIT COURT
The Honorable Terry Shewmaker, Judge
Cause No. 20C01-1305-MR-3

**January 15, 2015**

**BARNES, Judge**

## Case Summary

Leeshawn Rodgers appeals his sentence for murder. We affirm in part, reverse in part, and remand.

## Issues

Rodgers raises two issues, which we restate as:

I. whether the trial court properly ordered Rodgers to pay restitution for funeral bills; and

II. whether the sentence is inappropriate.

## Facts

On the afternoon of April 30, 2013, Eddie Johnson was visiting friends at Samara Wiley's house in Elkhart. Samara's cousins, Quintara Wiley and Davonda Wiley, were sitting on the porch and had a short conversation with Rodgers, who was walking past. Quintara later noticed Rodgers standing in the alley at the side of the house. When Johnson walked outside, Rodgers approached him and said, "I heard you were looking for me." Tr. p. 176. Johnson put his arm around Rodgers, and they walked toward the alley. Rodgers then pulled out a handgun and shot Johnson in the chest and abdomen. Johnson died from his wounds. Rodgers fled the area and was later found in Indianapolis at a relative's house.

The State charged Rodgers with murder, and a jury found him guilty as charged. At the sentencing hearing, the trial court sentenced Rodgers to sixty years in the Department of Correction. The trial court also ordered Rodgers to pay restitution

"through the Victim Offender Reconciliation Program for the victim's funeral expenses and reimbursement to the State of Indiana Criminal Justice Institute for restitution; only to the extent the Defendant is able to pay said restitution." App. p. 74. Rodgers now appeals.

## Analysis

### *I. Restitution*

Rodgers argues that the trial court's restitution order was improper. We reverse a trial court's order to pay restitution only for an abuse of discretion. Gil v. State, 988 N.E.2d 1231, 1234 (Ind. Ct. App. 2013). A trial court abuses its discretion if its "decision is clearly against the logic and effects of the facts and circumstances before it" or if it "misinterprets or misapplies the law." Id.

According to Rodgers, the trial court erred by allowing a third party to determine the restitution amount. Rodgers also argues that negotiation of a restitution amount through the victim-offender reconciliation program is allowed only if the defendant agrees and that he did not agree to do so. The State argues that Rodgers waived this issue by failing to object at the sentencing hearing. Generally, the failure to object to an award of restitution constitutes waiver of a challenge to the award on appeal unless a defendant argues that the award was fundamentally erroneous and in excess of statutory authority. C.H. v. State, 15 N.E.3d 1086, 1096 (Ind. Ct. App. 2014). Nevertheless, a number of cases have emphasized this Court's preference for reviewing a trial court's restitution order even absent an objection by the defendant. Id. (citing Rich v. State, 890 N.E.2d 44, 48-49 (Ind. Ct. App. 2008) ("[T]he vast weight of the recent caselaw . . . indicates that

3

the appellate courts will review a trial court's restitution order even where the defendant did not object based on the rationale that a restitution order is part of the sentence, and it is [our] duty . . . to bring illegal sentences into compliance.") (internal citations omitted), trans. denied).  Further, our supreme court recently addressed a restitution argument despite the lack of a proper objection during the sentencing hearing.  See Iltzsch v. State, 981 N.E.2d 55, 57 (Ind. 2013).  Consequently, we will address Rodgers's restitution argument.

A trial court may order restitution for "funeral, burial, or cremation costs incurred by the family or estate of a homicide victim as a result of the crime."  Ind. Code § 35-50-5-3(a)(5).  Indiana Code Section 35-40-6-4 provides:

> A prosecuting attorney or a victim assistance program shall do the following: . . . (9) In a county having a victim-offender reconciliation program (VORP), provide an opportunity for a victim, if the accused person or the offender agrees, to:
>
> (A)  meet with the accused person or the offender in a safe, controlled environment;
>
> (B)  give to the accused person or the offender, either orally or in writing, a summary of the financial, emotional, and physical effects of the offense on the victim and the victim's family; and
>
> (C)  negotiate a restitution agreement to be submitted to the sentencing court for damages incurred by the victim as a result of the offense.

There is no indication in the record that Rodgers agreed to negotiate restitution regarding the funeral expenses here.  Thus, the trial court's order that Rodgers pay restitution "through the Victim Offender Reconciliation Program for the victim's funeral expenses"

4

was improper. App. p. 74. Because Indiana Code Section 35-40-6-4(9) was inapplicable, the trial court was required to base its restitution order on evidence presented at the sentencing hearing, and our review reveals no evidence concerning the funeral expenses. See I.C. § 35-50-5-3(a) (providing that the trial court "shall base its restitution order upon a consideration of . . . funeral, burial, or cremation costs incurred by the family or estate of a homicide victim as a result of the crime"). We reverse the restitution award and remand for a new restitution hearing to be conducted. See Iltzsch, 981 N.E.2d at 56-57 (holding that, while "the better practice for the State would have been to present more substantial evidence about the nature and extent of the property damage," the cause should be remanded to the trial court for a new restitution hearing).

## II. Inappropriate Sentence

Rodgers argues that his sixty-year sentence is inappropriate under Indiana Appellate Rule 7(B). Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offenses and the character of the offender. When considering whether a sentence is inappropriate, we need not be "extremely" deferential to a trial court's sentencing decision. Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). Still, we must give due consideration to that decision. Id. We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. Id. Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

5

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." Id. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. Davidson v. State, 926 N.E.2d 1023, 1025 (Ind. 2010).

The nature of the offense is that nineteen-year-old Rodgers waited in a nearby alley for Johnson to come outside of a house that he was visiting. When Johnson went outside, Rodgers said, "I heard you were looking for me." Tr. p. 176. Johnson put his arm around Rodgers, and they walked toward the alley. Rodgers then pulled out a handgun and shot Johnson. Other adults and several children were nearby during the apparently premeditated and unprovoked shooting. Rodgers fled the area and was later found in Indianapolis at a relative's house.

As for the character of the offender, Rodgers asserts that he had a difficult childhood. According to Rodgers, he was thrown out of his house when he was ten years old and spent years in foster care, residential facilities, and juvenile detention facilities before becoming homeless. However, the PSI reports that Rodgers had lived with his fiancée for four years. Rodgers also has a significant criminal history. As a juvenile, he

6

was adjudicated delinquent for two counts of misdemeanor battery by bodily waste in 2004, two counts of misdemeanor battery in 2005, misdemeanor criminal mischief in 2005, and misdemeanor resisting law enforcement in 2009. Four additional charges of battery were dismissed. As an adult, he was convicted of misdemeanor possession of marijuana and misdemeanor fleeing a police officer in 2011, misdemeanor criminal trespass in 2012, and misdemeanor resisting law enforcement in 2013. Rodgers was on probation at the time of the current offense. The trial court noted Rodgers's disruptive behavior in the courtroom and that Rodgers's offenses had escalated.

The trial court concluded that the aggravating factors outweighed the mitigating factors and ordered Rodgers to serve sixty years rather than the fifty-five year advisory sentence. Given the senseless crime and Rodgers's criminal history, we cannot say that the sixty-year sentence is inappropriate in light of the nature of the offense and the character of the offender.

**Conclusion**

The restitution order was improper, and we reverse and remand for a new restitution hearing. However, the sixty-year sentence is not inappropriate. We affirm in part, reverse in part, and remand.

Affirmed in part, reversed in part, and remanded.

MAY, J., and PYLE, J., concur.