## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 10 2016, 6:13 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Patricia Caress McMath
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Anthony Middleton,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | February 10, 2016<br><br>Court of Appeals Case No.<br>49A02-1507-CR-901<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Mark Stoner, Judge<br><br>Trial Court Cause No.<br>49G06-1408-MR-40262 |

**May, Judge.**

[1] Anthony Middleton appeals his conviction of and sentence for murder.[1] He argues the State did not sufficiently rebut his claim of self-defense and his sentence is inappropriate based on his character and the nature of the crime. We affirm.

## Facts and Procedural History

[2] Middleton bought drugs from Timothy Guyton multiple times on August 15, 2014. It was common for Guyton or his girlfriend, Michellee,[2] to hold a gun when answering the door, take the purchaser to the kitchen, put down the gun, and weigh out the desired amount of crack.

[3] On August 16, Middleton knocked on Guyton's door and Michellee answered the door holding a gun. Middleton asked to buy a gram of crack and Michellee said she couldn't sell him that amount. Middleton got "a little upset," (Tr. at 111), went to the room where Guyton was sleeping, and started to shake Guyton to wake him up.

[4] Guyton eventually agreed to sell Middleton $40 worth of crack. Sallie Proctor, Michellee's friend, was sitting on the steps near the kitchen. Guyton went to the kitchen to weigh the drugs, and Michellee placed the gun on the counter next to the scales. Guyton picked up the gun, put it in his right back pocket,

---

[1] Ind. Code § 35-42-1-1 (2007).

[2] The parties and the Record list three different last names for Michellee - Watson, Rodenbeck, and Foush. To minimize confusion, we will refer to Michellee by her first name.

and said, "Let me get my piece before somebody grabs it." (*Id*. at 70.) Middleton said, "What are you going to do pop me, cuz?" (*Id*. at 71.) Middleton then "took his right arm and he reached around . . . to reach [Guyton's] back pocket." (*Id*. at 72.)

[5] Guyton "raised his left arm" and "swung around," (*id*. at 73), to prevent Middleton from taking the gun. Middleton held Guyton in a "bear hug," (*id*. at 117), and the two men wrestled to the floor. When they fell, the gun dropped to the floor. Middleton grabbed the gun and pointed it at Guyton, who put his arms in the air. Middleton said to Guyton, "Back up, I don't want to hurt you." (*Id*. at 74-5.) Proctor fled the room and Michellee left the kitchen to call for help.

[6] Michellee returned to the kitchen and saw Middleton beating Guyton in the head with the gun. She decided to call 911 and left the house. As she left the house, she heard a single gunshot and Guyton yelled, "Somebody help me." (*Id*. at 133.) When officers arrived on the scene, Guyton was dead and the officers arrested Middleton.

[7] During trial, Middleton offered an affirmative defense of self-defense. The jury returned a guilty verdict on Middleton's murder charge. The trial court sentenced Middleton to sixty years for murder.

# Discussion and Decision

## *Self-Defense*

[8] Self-defense is a legal justification for what would otherwise be a criminal act. *Brown v. State*, 738 N.E.2d 271, 273 (Ind. 2000). A person is justified in using "reasonable force" against another to protect himself from what he reasonably believes to be the imminent use of unlawful force. *Id*.; *see also* Ind. Code § 35-41-3-2 (use of reasonable force to defend self). To prevail on a claim of self-defense, the defendant must present evidence that he: (1) was in a place he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. *Wilson v. State*, 770 N.E.2d 799, 800 (Ind. 2002). An initial aggressor or a mutual combatant, whether or not the initial aggressor, must withdraw from the encounter and communicate the intent to do so to the other person before he may claim self-defense. *Id*. at 801.

[9] When a defendant claims he acted in self-defense, the State must disprove or rebut at least one element of self-defense beyond a reasonable doubt. *Carroll v. State*, 744 N.E.2d 432, 433 - 34 (Ind. 2001). The State may do so by presenting additional evidence or by relying on the evidence in its case-in-chief. *Id*. The standard of review for a challenge to the sufficiency of evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence claim. *Wilson*, 770 N.E.2d at 801. We neither reweigh the evidence nor judge the credibility of witnesses. *Id*. If there is sufficient evidence of probative value

to support the conclusion of the trier of fact, then the verdict will not be disturbed. *Id.*

[10] Middleton argues the State did not rebut his claim of self-defense. At trial, Middleton claimed he felt threatened when Guyton picked the gun up off the counter and said, "Let me get my piece before somebody grabs it." (Tr. at 70.) Middleton argued he withdrew from the fight and attempted to end it when he said to Guyton, "I don't want to hurt you. I don't want to shoot you." (*Id.* at 344.) Middleton argues, "[t]here is simply no evidence presented by the State as to what happened immediately before Middleton was hitting Guyton on the head or immediately after" because Proctor and Michellee, the only two witnesses, had left the room. (Br. of Appellant at 8-9.)

[11] The State rebutted Middleton's self-defense claim by presenting evidence Middleton was the initial aggressor in the altercation that led to Guyton's death. The State presented evidence Middleton made the first aggressive move when he "took his right arm and he reached around . . . to reach [Guyton's] back pocket." (Tr. at 72.) When Guyton picked the gun up from the counter, he did not threaten or act aggressively towards Middleton. At some point after Middleton grabbed the gun, he began beating Guyton with it before he shot Guyton. Middleton's alternate version of the facts is an invitation for us to reweigh evidence and judge the credibility of witnesses, which we cannot do. *See Wilson*, 770 N.E.2d at 801 (appellate court does not reweigh evidence or judge the credibility of witnesses).

## *Inappropriateness of Sentence*

[12] We may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. *Williams v. State*, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008) (citing Ind. Appellate Rule 7(B)). We consider not only the aggravators and mitigators found by the trial court, but also any other factors appearing in the record. *Roney v. State*, 872 N.E.2d 192, 206 (Ind. Ct. App. 2007), *trans. denied.* The appellant bears the burden of demonstrating the sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[13] When considering the nature of the offense, the advisory sentence is the starting point to determine the appropriateness of a sentence. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g* 878 N.E.2d 218 (Ind. 2007). The advisory sentence for murder is fifty-five years, with a sentencing range between forty-five and sixty-five years. Ind. Code § 35-50-2-3(a). The trial court sentenced Middleton to sixty years.

[14] One factor we consider when determining the appropriateness of a deviation from the advisory sentence is whether there is anything more or less egregious about the offense committed by the defendant that makes it different from the "typical" offense accounted for by the legislature when it set the advisory sentence. *Rich v. State*, 890 N.E.2d 44, 54 (Ind. Ct. App. 2008), *trans. denied*. Middleton argues the murder was "less egregious" than the typical offense because Middleton was "in fear of getting shot." (Br. of Appellant at 12.) The State presented evidence Middleton was agitated when he entered Guyton's residence, woke Guyton up by shaking him so Middleton could buy drugs, was

the initial aggressor, and beat Guyton with the gun before shooting him. We cannot hold Middleton's sentence inappropriate based on the nature of the crime.

[15] When considering the character of the offender, one relevant fact is the defendant's criminal history. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). The significance of a criminal history in assessing a defendant's character varies based on the gravity, nature, and number of prior offenses in relation to the current offense. *Id*. Middleton has twelve prior felony convictions and three misdemeanor convictions. Middleton has had eight petitions filed against him to revoke his probation, one parole violation, and one community corrections violation. We acknowledge Middleton's assertion the acts that led to his prior convictions were relatively non-violent. But his criminal history, which includes convictions of Class B felony burglary and possession of a handgun without a license indicate the seriousness of his criminal activity has escalated. We cannot hold Middleton's sentence inappropriate based on his character.

## Conclusion

[16] The State presented sufficient evidence Middleton did not act in self-defense. His sixty-year sentence is not inappropriate based on his character or the nature of the crime. Accordingly, we affirm.

[17] Affirmed.

Najam, J., and Riley, J., concur.