## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 07 2017, 8:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Donald C. Powers, Jr., <br> *Appellant-Defendant*, <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | August 7, 2017 <br><br> Court of Appeals Case No. 16A05-1612-CR-2855 <br><br> Appeal from the Decatur Superior Court <br><br> The Honorable Matthew Bailey, Judge <br><br> Trial Court Cause Nos. 16D01-1502-F2-109 16D01-1507-F1-482 |

**May, Judge.**

[1] Donald C. Powers, Jr. appeals the aggregate thirty-year sentence imposed after he pled guilty under separate cause numbers to Level 3 felony burglary[1] and Level 3 felony attempted aggravated battery.[2] Powers raises one issue on appeal, which we restate as whether his sentences are inappropriate in light of the nature of his offenses and his character. We affirm.

## Facts and Procedural History

[2] On February 27, 2015, Powers was subject to a no-contact order that was imposed as a condition of bail in a Level 5 felony case against Powers in Ripley County. That no-contact order prohibited Powers from contacting his wife, Shannon, from whom Powers was estranged. Shannon was living in a house she was renting for herself, where Powers had never lived, and to which Shannon had never given Powers access. Powers was living elsewhere.

[3] On that day, Powers broke into Shannon's home. She repeatedly asked him to leave, but Powers threw her down on the couch and began choking her. Shannon tried to yell to alert her neighbor that she needed help. Powers put his hand over her mouth so that she could not breathe, and he threatened to kill her. Powers hit Shannon in the mouth causing her to bleed. As she was trying to breathe and fight Powers off, Powers pulled a knife and said "is this really the way you want to go?" (State's Ex. 1 at 9.) Powers then said, "You don't

---

[1] Ind. Code § 35-43-2-1(2) (2014).

[2] Ind. Code §§ 35-41-5-1 (attempt) (2014); 35-42-2-1.5 (aggravated battery) (2014).

have to do this. We could get back together, and everything would be fine."
(*Id.*) Shannon managed to get outside the house, but the altercation continued and Powers tackled her as she tried to call 911. After Powers left, Shannon went to the emergency room, where she was found to have a sprained left ankle, bruises around her neck and her rib cage, bruises and scratches on her arm, and a busted lip.

[4] After visiting the emergency room, Shannon reported the event to police and provided sworn testimony of the events before a judge, who issued a warrant for Powers' arrest. The State charged Powers with Level 2 felony burglary with intent to commit intimidation or confinement, while armed with a deadly weapon.[3] Over the next two weeks, Shannon had telephone contact with Powers and tried to persuade him to turn himself in to police. Instead Powers threatened to kill himself and blamed Shannon for his situation.

[5] At some point, Powers told police he would turn himself in, but he did not arrive when he said he would, so the Decatur County Sheriff's Department, with assistance from the Indiana State Police fugitive team, began looking for him to serve the arrest warrant. When those authorities could not locate Powers, the Sheriff's Department requested assistance from a task force headed by the United States Marshall's Service. Trooper Shaun Hannon, a detective with the Indiana State Police, who also served on the United States Marshall's

---

[3] Ind. Code § 35-43-2-1(3)(A) (2014).

Service task force, was assigned the duty of serving Powers with the warrant. Detective Hannon was able to locate Powers by tracking his cell phone, and on March 11, 2015, twelve task force officers approached the house where they believed Powers was hiding. Officers were told Powers had fled the house, was wearing a ghillie suit,[4] did not want to go back to prison, was armed, and was prepared to take "extreme measures" to avoid being taken into custody. (Tr. at 46.) After learning Powers had fled the house, Detective Hannon requested additional assistance. Approximately sixty police officers, some dogs, and a helicopter then searched the surrounding woods but were unable to locate Powers.

[6] Detective Hannon decided to call off the search, but he and Trooper Justin Bean remained at the house to see if Powers would return. While there, they spoke by cell phone to Powers' brother, who told them: "Donald's not going to give up . . . he's got a gun . . . you guys are probably gonna shoot him." (*Id*. 52-53.) During that phone call, police heard a faint knock at a door on the back of the house, so they exited from a door on the side of the house to investigate. Detective Hannon went out first, armed with a taser, and Trooper Bean followed with a gun to provide cover for Detective Hannon. Trooper Bean testified, "I knew that he had made the decision to go less than lethal and uh, that I made the decision to, to be his cover and to make sure that nothing

---

[4] Detective Hannon testified a ghillie suit is clothing typically worn by hunters and military snipers, and it is designed to help the wearer blend into his surroundings so that he cannot be seen.

happened to either him or me." (*Id*. at 56.) As Detective Hannon rounded the corner of the house, he issued commands to Powers and then deployed his taser. Trooper Bean followed around the corner and saw the taser "was ineffective, I saw [Powers] start coming back up and that's when I saw the barrel of [Powers'] shot gun and another hand coming up . . . and that's when I was given my commands and I started . . . firing." (*Id*. at 55.) After Trooper Bean fired a couple of rounds, Powers' "shot gun went off," (*id*. at 56), and it "looked like a torch coming out of the end of that . . . shot gun, a big fireball coming toward you." (*Id*. at 56-57.) Neither Detective Hannon nor Trooper Bean was injured during the gunfight, but Powers' spinal cord was severed, leaving him paralyzed in all but his neck and one arm. For firing his gunshot during the confrontation with the two Troopers, the State charged Powers with one count of Level 1 felony attempted murder.[5]

[7] Nearly eighteen months after the shooting, Powers and the State entered a conditional guilty plea agreement. The State agreed to amend the charges from Level 2 felony burglary to Level 3 felony burglary, and from Level 1 felony attempted murder to Level 3 felony attempted aggravated battery. In exchange, Powers agreed to receive consecutive sentences that were between nine and fifteen years each. The trial court accepted that agreement.

---

[5] Ind. Code §§ 35-41-5-1 (attempt) (2014) & 35-42-1-1(1) (murder) (2014).

[8] After hearing evidence, the court entered two fifteen-year sentences to be served consecutively for an aggregate sentence of thirty years with six months of the burglary sentence suspended to probation. In support thereof, the court found three aggravators: Powers' criminal history, which consisted of fourteen prior convictions, including felony resisting law enforcement; (2) Powers' violation of the no-contact order from Ripley County; and (3) the fact Shannon's injuries from the burglary were greater than necessary to prove the elements of the charged offense. As for mitigators, the trial court accepted only Powers' remorse as a significant mitigating factor. The court noted Powers' guilty plea, but found it was a pragmatic decision and had taken over a year to be entered, such that the court declined to give it significant weight. The court also refused to accept as mitigators Powers' health needs, any hardship on his daughter from his incarceration, and his alleged probability to respond positively to probation.

## Discussion and Decision

[9] Powers contends neither his offenses nor his character warrant thirty years in prison. Indiana Appellate Rule 7(B) provides we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] the sentence is inappropriate in light of the nature of the offense and the character of the offender." Our review is deferential to the trial court's decision, and our goal is to determine whether the defendant's sentence is inappropriate, not whether some other sentence would be more appropriate. *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012), *reh'g denied*. An appellant has the burden to persuade us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d

1073, 1080 (Ind. 2006). Revision of a sentence under Rule 7(B) requires the appellant demonstrate his sentence is "inappropriate in light of *both* the nature of the offenses and his character." *Williams v. State*, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008) (emphasis in original).

[10] With respect to the nature of the offenses, the advisory sentence is the starting point for determining the appropriateness of a sentence. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g* 878 N.E.2d 218 (2007). The sentencing range for a Level 3 felony is three to sixteen years, with the advisory sentence being nine years. Ind. Code § 35-50-2-5 (2014). Thus, for each of Powers' convictions, the court imposed sentences that were toward the top of the range of possible sentences. When determining the appropriateness of a deviation from the advisory sentence, we consider whether there is anything more or less egregious about the offense committed by the defendant that makes it different from the "typical" offense accounted for by the legislature when it set the advisory sentence. *Rich v. State*, 890 N.E.2d 44, 54 (Ind. Ct. App. 2008), *trans. denied*.

[11] Level 3 felony aggravated battery occurs when a person "knowingly or intentionally inflicts injury on a person that creates a substantial risk of death or causes: (1) serious permanent disfigurement; (2) protracted loss or impairment of the function of a bodily member or organ; or (3) the loss of a fetus." Ind. Code § 35-42-2-1.5 (2014). An "attempt" occurs when "acting with the culpability required for commission of the crime, the person engages in conduct that constitutes a substantial step toward commission of the crime." Ind. Code

§ 35-41-5-1 (2014).  Powers' plea of guilty was based on his firing a 12-gauge shotgun at not one, but two, police officers who were attempting to serve an arrest warrant on him.  Powers knew about the arrest warrant and about the officers looking for him, but rather than turn himself in to police, as he had promised he would do, Powers put on camouflage, armed himself with a weapon, and hid in the woods.  Powers' claim that he did not mean to fire at officers does not change the facts his shotgun was loaded and fired as he moved the barrel in the direction of the officers.

[12]    Level 3 felony burglary occurs when a person "breaks and enters the building or structure of another person, with the intent to commit a felony or theft in it . . . [and it] results in bodily injury to any person other than a defendant."  Ind. Code § 35-43-2-1 (2014).  When Powers broke into Shannon's house, he did not just commit burglary, he also violated a no-contact order that had been court ordered as a condition of his parole in another felony case.  He was armed with and threatened to harm Shannon with a knife, such that his behavior satisfied the elements of Level 2 felony burglary.  *See* Ind. Code § 35-43-2-1(3)(A) (crime is Level 2 felony if "committed while armed with a deadly weapon").  His conviction required "bodily injury," but any one of the many injuries Shannon sustained -- a sprained ankle, bruising around her neck, ribs, and wrists, and scrapes to her arm and a bloody lip -- would have satisfied the statutory requirement.  Thus, we agree with the trial court that she had more injuries than required to prove Powers' burglary.

[13]     There is nothing about the nature of Powers' offenses that would suggest a thirty-year sentence is inappropriate. Nor do we believe the nature of those offenses is somehow mitigated, as Powers asserts, by the facts that Powers failed to obtain the treatment he needed for his alleged heroin addiction and is confined to a wheelchair as a result of his decision to point a shotgun at police officers. Thus, we turn to Powers' character.

[14]     Our review of an offender's character begins with a defendant's criminal history. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). The significance of a defendant's criminal history depends on the nature, number, and gravity of the prior offenses in relation to the current offense. *Id*. Powers was convicted of Class A misdemeanor theft in 1999; Class A misdemeanor possession of marijuana and five counts of Class C misdemeanor illegal possession of alcoholic beverages in 2001; Class B misdemeanor public intoxication and Class A misdemeanor driving while suspended in 2003; Class A misdemeanor operating while intoxicated and Class D felony resisting law enforcement in 2004; Class D felony theft in 2005; and Class B misdemeanor public intoxication in 2007. Powers committed the instant crimes while on parole for a Level 5 felony alleged to have been committed against his ten-year-old daughter, and in violation of a no-contact order entered as a condition of that parole.

[15]     Powers testified he takes full responsibility for the crimes committed in these cases, and the trial court found his remorse genuine. We have no reason to doubt the trial court's finding. However, we agree with the State that Powers'

injuries, while tragic, are not relevant to determining whether a thirty-year sentence is inappropriate for his character. Further, Powers' criminal history is extensive. After due consideration, we conclude that his aggregate thirty-year sentence is not inappropriate in light of the nature of his offenses and his character.

# Conclusion

[16] For the foregoing reasons, we affirm Powers' aggregate sentence of thirty years.

[17] Affirmed.

Pyle, J., concurs.

Brown, J., dissents with separate opinion.

| | |
|---|---|
| Donald C. Powers, Jr., | Court of Appeals Case No. |
| *Appellant-Defendant*, | 16A05-1612-CR-2855 |
| v. | |
| State of Indiana, | |
| *Appellee-Plaintiff*. | |

**Brown, Judge, dissenting.**

[18] I respectfully dissent from the majority's conclusion that Powers's aggregate sentence of thirty years is not inappropriate. Powers was sentenced to the thirty-year maximum provided under the plea agreement with six months suspended to probation. With respect to the nature of the offense, I recognize that he fled into the woods when law enforcement arrived to serve an arrest warrant and ultimately discharged a shotgun. His testimony was that he tried to shoot himself. Whether or not that's true, he was shot in the back by an

officer, his spine was severed, he cannot move from just below his armpits down, and he will be confined to a wheelchair for the rest of his life. Powers testified that, while in the general population, another inmate helped him by picking him up, placing him in a shower chair and pushing him into the shower, and then picking him up and placing him back in his bed. The presentence investigation report states that he is paralyzed from his chest down as a result of being shot multiple times and he suffers from pressure sores on his hip and has stomach issues. His physical ability to reoffend would be quite low compared with able-bodied individuals and he is facing a life sentence of confinement to a wheelchair.

[19] As for his character, Powers pled guilty pursuant to a plea agreement. The record reflects that his criminal history is comprised primarily of class B and class C misdemeanors, with his last offense occurring in 2007. He took full responsibility for his crimes, stating his actions were one hundred percent his fault, apologized to the officers, and stated it was his own fault he was in a wheelchair. Shannon Powers testified that her first nine years of her marriage to Powers were the best years of her life, that things changed when he did not stop using drugs, and that all of his bad actions occurred in the span of about six months. She agreed to provide the constant medical care he needs. Powers has visited Centerstone as a guest speaker to inspire individuals to stop using heroin by seeing him in a wheelchair and hearing his story.

[20] In light of the fact Powers received an aggregate executed sentence six months shy of the maximum contemplated by his plea agreement, his remorse, and the

fact he was rendered paralyzed from the chest down and confined to a wheelchair, I would remand for the trial court to resentence Powers to the advisory sentence of ten years for his conviction for burglary and ten years for his conviction for attempted aggravated battery and for those sentences to be served consecutively for an aggregate executed sentence of twenty years with six months suspended to probation.